REID v. DIAMOND PLATE-GLASS CO.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1898.)

No. 526.

1. EVIDENCE—PAROL TESTIMONY TO VARY WRITING.
   It is a rule of evidence, quite aside from the statute of frauds, that parol testimony of a contemporaneous oral agreement or understanding, not included in the written contract, is inadmissible to contradict, vary, add to, or subtract from the terms thereof, when such contract is complete in itself and unambiguous in its terms. This rule is strictly enforced by the Michigan courts.

2. SAME—RELEVANCY.
   In an action for breach of a contract of sale of plate glass, where there is an issue as to a parol agreement for a reduction in price, evidence as to what

occurred in regard to a scheme of glass manufacturers at about the time of the transaction in question is inadmissible.

3. SAME—STATUTE OF FRAUDS—SALES.
      Under the Michigan statute of frauds, which makes invalid executory contracts for the sale of merchandise, for a price of $50 or more, unless some note or memorandum thereof be made and signed by the party to be charged, a subsequent agreement for the delivery at a reduced price of a quantity of merchandise in addition to that previously contracted for in writing must itself be in writing, and, if it remains entirely executory, cannot be proved in an action on the written contract.

4. SAME.
      It seems that under the Michigan statute, which requires executory contracts of sale to be in writing, but declares that the consideration need not be expressed in the writing, the omission of the price of goods sold is only excused when no price is agreed on, and the law is left to imply an agreement for a reasonable price; but, if a price is in fact agreed on, it must be inserted in the memorandum.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This is an action in assumpsit to recover a balance due on the purchase price of a quantity of plate glass sold and delivered by defendant in error to plaintiff in error. The contract of sale was in writing, duly executed April 19, 1894, and was for 50,000 feet of plate glass, subsequently increased by written contract to 60,000 feet. The actual quantity delivered appears to have been 57,000 feet. The sale was for future delivery, and the time of delivery was by agreement extended on two separate dates, July 19, 1894, and October 19, 1894. Under the general issue, the defendant gave notice of the special defenses relied on. The defense, as stated, was that at the time of the execution of the original contract there was a parol agreement that, in case of a fall or reduction in the market price of glass before delivery was made, the defendant should have the benefit of such reduction, and that a like oral agreement was made on the occasion of each extension of time for delivery, and that before any delivery a reduction in prices was made, bringing them about 20 per cent. below the price as fixed in the written contract, and that credit should be allowed for such reduction in price. It was further insisted that, as an adjustment of the matter of prices, it was subsequently, on January 4, 1895, agreed between plaintiff in error and the agent of defendant in error that 50,000 feet of glass should be delivered and paid for at the contract price, and that an additional quantity of 50,000 feet should be delivered and paid for at the new or reduced price; making in all 100,000 feet, half under the old and half under the new contract, as it is called. This contract was not in writing. It is said that the defendant in error shipped the quantity of glass called for under the old contract, and refused to carry out the new contract of January 4, 1895, on account of which plaintiff in error was compelled to buy glass at a price above the reduced price on this additional 50,000 feet, to be furnished under the contract of January 4, 1895; and the amount of this difference is offered by way of set-off and recoupment as the damage sustained by the breach of the contract of January 4, 1895. The first shipment of glass was on January 4, 1895, the date on which the new or modified contract is claimed to have been made. The court, on objection, excluded the evidence offered to show a contemporaneous oral agreement for a reduction in the contract price, not contained in the writing, and also excluded all oral evidence of the contract claimed to have been made January 4, 1895, but permitted the introduction of all evidence, oral or written, tending to show an agreement for reduction made in July or October, when the time for delivery was extended, and also admitted so much of the conversations or statements on January 4, 1895, as related to or tended to show an oral agreement on the dates of extensions, and instructed the jury, in case such oral agreement was found to have been made at the time of either or both extensions, to allow the defendant the benefit thereof, as a credit on the amount sued for; putting before the jury the figures at which the balance of the account would stand, both with

and without such reduction or credit. There was a verdict and judgment against defendant for the full amount of the unpaid balance, according to the original contract price, and the case is brought up on writ of error.

Frederick W. Whiting, for plaintiff in error.

Henry M. Duffield, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case, delivered the opinion of the court.

Error is assigned on the court's ruling in excluding evidence offered to show that it was a part of the original contract that defendant was to have any reduction in prices before delivery, although this was not embraced in the writing. The Michigan statute of frauds contains two separate sections which affect the questions here presented,—the one specifically, and the other generally. They are as follows:

"No contract for the sale of any goods, wares, or merchandise, for the price of fifty dollars or more shall be valid, unless the purchaser shall accept and receive part of the goods sold, or shall give something in earnest to bind the bargain, or in part payment, or unless some note or memorandum of the bargain be made, and signed by the party to be charged thereby, or by some person thereunto by him duly authorized." "The consideration of any contract, agreement or promise required by this chapter to be in writing, need not be expressed in the written contract, agreement or promise, or in any note or memorandum thereof, but may be proved by any other legal evidence." 2 How. Ann. St. §§ 6186, 6189.

Section 6186 is substantially similar to section 17 of St. 29 Car. II, now superseded, it appears, by the sale of goods act of 1893, which re-enacts and enlarges the original section. 2 Tayl. Ev. (9th Ed.) § 1020.

For the purpose of disposing of the question presented by the assignment of error just referred to, we are not concerned with the statute of frauds, further than to say that it could not be doubted, and is conceded, that the contract was one required by section 6186 of the Michigan statute to be in writing. It is to be further remarked that the contract was not only required to be, but was in fact, put in writing. The contract is complete in itself, clear and unambiguous in its terms and provisions, and undoubtedly represents the deliberate engagement of the parties. Apart from any particular question of the statute of frauds, there is an ancient rule of evidence, of wide application, resting upon substantially the same principle as the statute of frauds, which does not permit parol testimony to be received to contradict, vary, add to, or subtract from the terms of a valid written instrument. 2 Jones. Ev. 437, 438, 446; 1 Greenl. Ev. § 275; 2 Tayl. Ev. §§ 1132, 1133. The rule is laid down by the author of the work last cited as follows:

"Bearing the above principles in mind, the leading general rule respecting the admissibility of extrinsic evidence to affect what is in writing is that parol testimony cannot be received to contradict, vary, add to, or subtract from the terms of a valid written instrument. The common-law rule may be traced back to a remote antiquity. It is founded on the inconvenience that might result if matters in writing, made by advice and on consideration, and intended

finally to embody the entire agreement between the parties, were liable to be controlled by what Lord Coke calls 'the uncertain testimony of slippery memory.' When parties have deliberately put their mutual engagements into writing, in language which imports a legal obligation, or, in other words, a complete contract, it is only reasonable to presume that they have introduced into the written instrument every material term and circumstance. Consequently all parol testimony of conversations held between the parties, or of declarations made by either of them, whether before or after or at the time of the completion of the contract, will be rejected, because such evidence, while deserving far less credit than the writing itself, would inevitably tend, in many instances, to substitute a new and different contract for the one really agreed upon, and would thus, without any corresponding benefit, work infinite mischief and wrong. Apart from all considerations of convenience, positive enactment has imposed the same rule in several cases. It has, by requiring certain transactions to be evidenced by writing,—as, for instance, wills, contracts within the statute of frauds, and the like,—rigidly excluded all parol testimony tending to vary the terms contained in the written instrument. The statutory rule will perhaps be more strictly enforced than that which rests on the common law alone, because, in the former case, to relax the rule in any degree is, to the like extent, to repeal the particular act which renders the writing necessary. The term 'written instrument,' for this purpose, includes, not only records, deeds, wills, and other instruments required by statute or common law to be in writing, but every document which contains the terms of a contract between different parties, and is designed to be the repository and evidence of their final intentions."

De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536, was a case in relation to a sale of merchandise, consisting of varnish, etc.; the contract being in writing, and in form similar to the one now in question. It was held in that case that where a contract of sale was in writing, and contained no warranty, parol evidence was not admissible to add a warranty, and, further, that parol evidence was not admissible to show a warranty inconsistent with the warranty contained in the contract. It was generally said that where parties have reduced their contract to writing, without any uncertainty as to the object or extent of the engagement, evidence of antecedent conversations between them in regard to it was inadmissible. Mr. Justice Lamar, giving the opinion of the court, said:

"In the case of The Reeside, 2 Sumn. 567, Fed. Cas. No. 11,657, Mr. Justice Story said: 'I apprehend that it can never be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract, and a fortiori not in order to contradict them. An express contract of the parties is always admissible to supersede or vary or control a usage or custom, for the latter may always be waived at the will of the parties. But a written and express contract cannot be controlled or varied or contradicted by a usage or custom; for that would not only be to admit parol evidence to control, vary, or contradict written contracts, but it would be to allow mere presumptions and implications, properly arising in the absence of any positive expressions of intention, to control, vary, or contradict the most formal and deliberate written declarations of the parties.' The principle is that, while parol evidence is sometimes admissible to explain such terms in the contract as are doubtful, it is not admissible to contradict what is plain, or to add new terms. Thus, where a certain written contract was for 'prime singed bacon,' evidence offered to prove that by the usage of the trade a certain latitude of deterioration called 'average taint,' was allowed to subsist before the bacon ceased to answer that description, was held to be inadmissible. 1 Greenl. Ev. § 292, note 3; Yates v. Pym, 6 Taunt. 446; Barnard v. Kellogg, 10 Wall. 383; Bliven v. Screw Co., 23 How. 420; Oelricks v. Ford, Id. 49." "The third proposition [continued the court], that the court erred in excluding evidence of an antecedent conversation between the salesman and one of the plaintiffs

in error, is disposed of by the well-settled rule that 'when parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a prevous colloquium between the parties, * * * as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.' 1 Greenl. Ev. § 275, and authorities cited; White v. Bank, 102 U. S. 658; Metcalf v. Williams, 104 U. S. 93; Martin v. Cole, Id. 30."

In Bedford v. Flowers, 11 Humph. 242, the suit was in regard to a written contract of hiring, in which the service of the slave hired was limited to a particular business; the contract specifying the work as to cut cord wood, and "for no other purpose." It was held that parol evidence was inadmissible to explain, alter, or modify the terms of the contract, or to prove a custom in conflict with those terms. In disposing of the question, the court said:

"It is argued that the court erred in excluding the conversation between the parties, previous to the execution of the contract, as to the meaning of the words, 'cutting cord wood, and for no other purpose.' We do not think so. The rule is well settled that when a contract has been reduced into writing, in plain and unambiguous terms, without any uncertainty as to the object or undertaking of the parties, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was embraced in such written contract. And in such case, in the language of Lord Denman, 5 Barn. & Adol. 64, 'verbal evidence is not allowed to be given of what passed between the parties, either before the written instrument was made, or during the time it was in a state of preparation, so as to add to or subtract from, or in any manner to vary or qualify, the written contract.' The meaning and intention of the parties, in all such cases, must be ascertained and declared by the court from what is written in the instrument; and no extrinsic evidence of the intention of the parties from their declarations or conversations, whether at the time of executing the instrument, or before or after that time, is admissible."

So, in The Cayuga, 16 U. S. App. 583, 8 C. C. A. 188, and 59 Fed. 483, the written release in question included, by its terms, all demands, and this court decided that direct parol evidence that a certain claim was not in the minds of the parties was not admissible. The court said:

"This agreement for release was in the nature of a contract, and could no more be disputed or controlled by parol evidence than any other instrument in writing witnessing an agreement of parties. 2 Whart. Ev. (3d Ed.) § 1063; Wood v. Young, 5 Wend. 620; Stearns v. Tappin, 5 Duer, 294; Pratt v. Castle, 91 Mich. 484, 52 N. W. 52; Cummings v. Baars, 36 Minn. 350, 31 N. W. 449; Sherburne v. Goodwin, 44 N. H. 271, 276."

This is undoubtedly the rule established by the Michigan cases, and enforced with great strictness. McEwan v. Ortman, 34 Mich. 325; Cohen v. Jackoboice, 101 Mich. 409, 59 N. W. 665. In the last-named case the question arose in relation to a written order as follows:

"Please insert my advertisement in the Lumber Worker, twelve months, to occupy ⅛ space, for which we agree to pay you the sum of $24, payable quarterly.                                    Joseph Jackoboice."

After plaintiffs had published the advertisement for six months, the defendant wrote them to discontinue the advertisement, and send

him the amount due to date. Plaintiffs continued the publication to the end of the year, and sued to recover the balance. The court below held that the writing did not constitute such a written contract as would exclude parol evidence of a contemporaneous agreement; that, if the advertisement did not suit, it could be discontinued at any time. McGrath, C. J., speaking for the court, said:

"In this we think the court erred. There is no ambiguity in this instrument. It is an order to insert an advertisement, to occupy a given space, for a given period, at a given price, and specifies when the price agreed upon shall be paid. It contains all the indicia of a contract, except that it was not executed by both parties. Defendant does not attempt to supply an omission in the instrument. He does not undertake to show any fraud or misrepresentation in matters of inducement. Although this instrument directs a publication for twelve months, he was allowed to show that he reserved the right, in case the advertisement did not suit, to discontinue it at any time. In other words, he was allowed to show by parol that he reserved a right inconsistent with the plain and express provisions of an instrument, which could have no other office than as a contract, to be made effectual upon acceptance, and needing only such acceptance to give it all the force and effect of a contract. Suppose it had been written out by defendant, but it had not been signed by him, but had been delivered with like intent. There is no question of the statute of frauds here."

This is an instructive case, in which other cases, including previously decided Michigan cases, are reviewed. See, also, Union Stock-Yards & T. Co. v. Western Land & Cattle Co., 18 U. S. App. 438, 7 C. C. A. 660, and 59 Fed. 49; Gorrell v. Insurance Co., 24 U. S. App. 188, 11 C. C. A. 240, and 63 Fed. 371; Railway Co. v. Blewett, 7 U. S. App. 285, 2 C. C. A. 415, and 51 Fed. 625; Phosphate Co. v. Heller, 20 U. S. App. 589, 9 C. C. A. 504, and 61 Fed. 280; Van Winkle v. Crowell, 146 U. S. 42, 13 Sup. Ct. 18.

The action of the court in excluding oral evidence of a contemporaneous agreement or understanding not included in the contract was therefore clearly correct. It is to be repeated that the court received the evidence offered tending to show an oral agreement to give the defendant the benefit of any reduction in prices made at either of the extensions of the time of delivery of the glass in July and October, 1894; and the question whether such agreement for the modification of the contract had been made was submitted to the jury under full instructions, of which it is certain the plaintiff in error cannot justly complain.

The defendant below offered to prove what occurred in regard to a scheme of manufacturers of glass during the year 1894. Just what relation the acts of the glass manufacturers had to the case, and how they did or could affect the rights of the parties to this written contract, is not explained, beyond the suggestion that such acts related to prices, and served in that way to shed light upon what it was claimed took place between the plaintiff and defendant. This evidence was obviously properly excluded by the court.

We are next brought to the error assigned to the action of the court in excluding oral evidence offered to show the new or substituted agreement of January 4, 1895. As before stated, the plaintiff in error insisted that such contract was made, and that he was to receive 50,000, instead of 60,000, feet of glass, and pay for the same

according to the price fixed by the original contract, and that defendant in error was to sell, and plaintiff in error accept and pay for, an additional quantity, of 50,000 feet, at the reduced or cut price. The two telegrams which passed upon this subject were received in evidence, but the oral conversations were excluded, and the court also excluded certain correspondence which plaintiff in error insisted tended to show that an oral agreement in fact was made. Neither the writings admitted, nor those excluded, in relation to that contract, contain any such reference to the terms of the contract as to comply with the statute of frauds of Michigan, aside from other defects. We do not understand counsel for plaintiff in' error to insist that they do, but only that they tend to show that an oral agreement was made. Obviously, all that was in writing would be no sufficient memorandum, under the plain provisions of the statute, as well as under the doctrine of the case of James v. Muir, 33 Mich. 223. The contract which plaintiff in error offered to prove as being made on the 4th of January, 1895, was itself a contract which, under section 6186 of the statute of frauds of Michigan, was required to be in writing, and oral evidence of such a contract was properly excluded by the court for this reason. In Whipple v. Parker, 29 Mich. 372, 373, the supreme court of Michigan said:

"But the consideration for the agreement, promise, or stipulations of the party to be charged, and which are in writing, may, and perhaps generally does, consist of counter promises or executory stipulations to be performed by the other party; and if these are not, by his portion of the contract, to be performed till after the expiration of a year, it may well be doubted whether this statute, dispensing with a written statement of the consideration, would apply to the case, and allow such a consideration to be proved by parol; and, if he were sued upon his portion of the contract, he would be the party to be charged. But, * * * as there is no written contract, these questions do not arise here, and I shall not discuss them."

The question here suggested and reserved came before the same court in the subsequent case of McEwan v. Ortman, 34 Mich. 324. The suit in this case was upon a promissory note, and resulted in a judgment in favor of the plaintiff below. The error assigned was that a valid defense had been excluded. This defense was that the note was given for a part of the price named in a written contract for the purchase of land, and that there was an oral arrangement at the time the note and contract were made that the purchaser was to have the option of retaining the contract and paying the note, or surrendering the contract and thereby discharging his liability on the note. The supreme court held that evidence of such oral agreement was properly excluded, because the result would be to import into a written contract a verbal stipulation inconsistent with its terms, and. moreover, that such a stipulation as was sought to be shown would itself be void, under the statute of frauds, unless in writing. and that the offer was not merely to show by parol a change in the terms of a written contract, but to show such an agreement as could not, under any circumstances, have been made by parol. What the court said was:

"The attempt here is to import into a written contract a verbal stipulation quite inconsistent with its terms. By the contract the land was to belong to

Mr. McEwan, not by way of security, but in his own right. It was to belong to him, by the verbal stipulation, until he should see fit to surrender (or more properly retransfer) it. If it had been a security, the option would have been with Ortman, as mortgagor, and not with McEwan. Under the statute of frauds, such a stipulation would be void, unless in writing; and the offer was not merely to show by parol a change in the terms of a written contract, but to show such an agreement as could not have been made by parol under any circumstances. The surrender was meant to release an equitable estate in fee simple, and an agreement for such a purpose cannot be made, except by an instrument in writing signed by the party releasing or transferring it. A verbal agreement to transfer any other parcel of land would be no more contrary to the statute than one to release or surrender a parcel mentioned in a contemporaneous contract. And such an agreement is not a defeasance, but an agreement for a resale."

Whatever may be said in regard to a modification of the original contract so as to make the quantity of glass 50,000, instead of 60,000, feet, at the price stipulated for in the contract, we think it does not admit of question that the offer to show the sale of an additional 50,000 feet of glass at a different and reduced price was an attempt to show by parol testimony a contract clearly required by the statute of Michigan to be in writing, and such testimony was for this reason properly excluded by the court; and this assignment of error cannot, therefore, be sustained. Defendant having had the benefit of the evidence offered to establish an oral agreement at the July and October extensions, and the evidence of the other parol agreements having been properly rejected, it would have been the manifest duty of the court, on the whole of the remainder of the competent evidence, to direct a verdict for the plaintiff. None of the other numerous errors assigned could, therefore, have operated to the prejudice of the defendant below, as affecting the merits of the case. This view of the case, and the result, would render it unnecessary for us to decide definitely whether, under the statute of frauds of Michigan, an executory contract, like the original contract in this case, when reduced to writing, may be varied, added to, or modified by subsequent parol agreement; or whether, to be valid under section 6186, the memorandum or contract must also contain the price, when that is in fact agreed upon, and made a term or provision of the contract, or whether this, and similar enactments found in some of the states, were only intended to make good, and are limited to, contracts silent as to the price or consideration. It is certain that in the case before referred to, of James v. Muir, the unanimous judgment of the supreme court of Michigan was that where a contract of sale (in that case, a contract for the sale of square timber) is executory, and within the statute of frauds, the contract or memorandum must name the price, as well where a reasonable price is agreed upon as where any other standard or amount is stipulated, and, if the price is left to be arranged by parol, that the memorandum will be incomplete. Campbell, J., speaking for the court, said:

"As this is a suit in which defendant, and not plaintiff, is the 'party to be charged,' and as the payment of the price is the only thing for which he is chargeable, it may be a question of some importance whether, if this paper is a contract of sale, the statute of frauds is complied with so as to bind him. Where a contract is executory, and not executed, it is laid down by some authorities, if not generally, that unless the price is fixed distinctly according

to some standard, either of amount, or of market, or of reasonableness, or some other method of ascertainment, the contract is incomplete, and the purchaser is not bound. Where goods are accepted, and nothing has been said about the price, a reasonable price has been recognized as correct. In Acebal v. Levy, 10 Bing. 376, it was held that where a contract was silent as to price, and there was evidence of a parol agreement as to price, there could be no recovery on a quantum valebant, and that a contract in writing was as necessary for a reasonable price as any other. In Valpy v. Gibson, 4 C. B. 837, where the court found expressly an acceptance of goods where the invoice was priced, Wilde, C. J., remarked, obiter, that the omission of price did not necessarily invalidate a contract of sale, and that goods were frequently sold by a contract 'which does not specify the price or mode of payment; leaving them to be settled by some future agreement, or to be determined by what is reasonable under the circumstances.' "

See, also, Gault v. Stormont, 51 Mich. 636, 638, 17 N. W. 214; Hall v. Soule, 11 Mich. 494.

No specific reference to the Michigan statute rendering a statement of the consideration in the contract or memorandum unnecessary is contained in the opinion, but it must be assumed that the court had this provision of the statute in mind. Apparently, the court thus adopted and approved the doctrine of the English cases, which is that, if the price is at the time agreed upon, it must be contained in the written contract, but, if not agreed upon, the contract may be upheld, if valid in other respects, when silent as to the price; leaving the law to import into the contract, by implication, the promise to pay a reasonable price. In Williams v. Morris, 95 U. S. 444, it was held to be a general rule that the memorandum should mention the price. The court said:

"Decided cases everywhere require that the memorandum should mention the price."

In 1 Benj. Sales, § 251, the result of the English cases is stated as follows:

"It is plainly deducible from the foregoing decisions that, so far as price is concerned, the rule of law is that, where there is no actual agreement as to price, the note of the bargain is sufficient, even though silent as to the price, because the law supplies the deficiency by importing into the bargain a promise by the buyer to pay a reasonable price. But the law only does this in the absence of an agreement, and therefore, where the price is fixed by mutual consent, that price is part of the bargain, and must be shown in writing, in order to satisfy the statute. And, finally, that parol evidence is admissible to show that a price was actually agreed on, in order to establish the insufficiency of a memorandum which is silent as to price. As to the other terms of the contract, it is necessary that they should so appear by the written papers as to enable the court to understand what they actually were, in order to satisfy the statute."

And so, in 2 Tayl. Ev. § 1021, after referring to section 4 of the statute of frauds, as being substantially the same as section 4 of the sale of goods act of 1893, which was substantially the same as section 17 of the original statute of frauds, and further stating that, to satisfy either enactment, the consideration for the agreement, in the one case, and for the bargain, in the other, must appear in the writing, with certain named exceptions, it is said:

"This requirement applies, not only to bargains for the sale of goods, to agreements upon consideration of marriage, to contracts for the sale or lease of lands, and to agreements not to be performed within a year, but also to

*special promises made by executors or administrators to answer damages out of their own estate. This doctrine is held with a view of effectuating the object of the statute."*

And, continuing the discussion, it is further said (section 1024), upon the same subject:

"Moreover, the omission of the particular mode or time of payment, or even of the price itself, does not necessarily invalidate a contract of sale; and a written order for goods 'on moderate terms' will satisfy the statute, though, if a specific price be agreed upon, it must be mentioned in the contract."

The same doctrine is laid down as the established law in Browne, St. Frauds, §§ 376, 377, where it is said:

"The memorandum must also contain the express stipulations of the contract. Thus, it must contain the price agreed to be paid for property sold, where the contract contained a stipulation as to price, and, when the memorandum states one price, no recovery can be had if it be shown that the parties had really agreed for another; for the true contract is, as to one of its essential elements, left unsupported, the memorandum being shown to be not an accurate statement of the contract which the parties made. If no price is named by the parties, the memorandum may be silent in that respect. If the property was sold for what it was reasonably worth, that fact need not be stated in the memorandum. In Acebal v. Levy, in the court of common pleas, Tindal, C. J., in the course of the opinion which he delivered for the court, expressed a doubt whether this would be so in the case of executory contracts of sale, i. e. contracts of sale and delivery where the property is still in the possession and control of the vendor. But in Hoadly v. McLaine [10 Bing. 482], a few months later, in the same court, the very question was presented; and Chief Justice Tindal concurred in the decision that even in the case of an executory contract, where no price was named in the contract, none need be named in the memorandum."

It has been observed that in the case of James v. Muir the supreme court of Michigan approved and followed the case of Acebal v. Levy.

It must be remarked that a statement of the price in the memorandum of a contract of sale is not always the same thing as the statement of the consideration. For example, take the case of a contract for a bill of merchandise at the stipulated price of $500. The consideration would be the $500 which the buyer agreed to pay. But if the stipulation were that the buyer might make payment of the agreed price in wheat, at the rate of one dollar per bushel, it is evident that the recital of such a price would amount to more than a mere statement of the consideration, and would contain an essential term or provision of the contract. And so, in Browne, St. Frauds, § 381a, it is said:

"The statement of the price in the memorandum of a contract of sale is not always to be regarded in the same light as the statement of the consideration of the contract. When an action is brought upon a contract within the statute, the memorandum must contain some designation of the parties contracting, and the terms of the contract, which last, in the case of a contract of sale, would include the price, if any had been stipulated. It need not contain or state any promise to perform or allegation of performance, although such promise or performance constitutes the only consideration for the engagement upon which the defendant is sought to be charged. In Egerton v. Mathews [6 East, 307], for example, it did not appear in the memorandum whether or not the plaintiffs ever had delivered, or agreed to deliver, any cotton; yet delivery, or a promise to deliver, was evidently the only consideration for the defendant's promise to pay. The decision of Egerton v. Mathews was certainly correct, because all the terms of the bargain were there presented in the writing,—not because the word 'bargain' imports a consideration

**any** less than the word 'agreement.' On the other hand, as Mr. Justice Bayley says, 'it would be a very insufficient agreement to say, "I agree to sell A. B. my lands," without specifying the terms or the price,' because the price which is an element of the sale is not stated, and not because a memorandum of an agreement to do a thing must necessarily show the motive or inducement for making it."

The decided cases generally recognize the clear distinction between contracts silent as to the price or consideration, or in which the recital of the consideration is merely formal, as stating a fact, and those in which the statement goes further, and becomes essential and contractual, as fixing a term of the agreement. In 6 Am. & Eng. Enc. Law (2d Ed.) p. 775, this distinction and the rule are thus stated:

"So much for the admissibility of evidence to vary the consideration expressed in a deed or written contract, when the expression is merely the recital of a fact. When, however, the statement of the consideration leaves the field of mere recital, and enters that of contract, thereby creating and attesting rights, as shown by the intention of the parties, to be gathered from the instrument, it is no longer open to contradiction by extrinsic evidence."

As illustrating the distinction, Jackson v. Railroad Co., 54 Mo. App. 636, is referred to, in which the court said:

"Suppose the consideration in a deed should be, 'In consideration of the sum of $1,000, to be paid to me in beef cattle, weighing not less than 1,200 pounds each, at 5 cents per pound.' Would it be contended that a consideration thus expressed contractually could be orally shown to be other than as expressed?"

Other cases cited make the proposition practically clear.

If the contract of sale must, then, exhibit the price, where a stipulated price is agreed to be paid, it becomes an essential element of, or a term in, the contract, and protected by the statute as fully as any other term or condition of the contract. Consequently, in Abell v. Munson, 18 Mich. 306, it was held that, the statute of frauds requiring all contracts for the sale of lands to be in writing, and making them void if not in writing, parol evidence could not be received to show a subsequent verbal agreement to change any of the terms, as no part of the contract could rest in parol. The language of the court is:

"The statute of frauds requires every contract for the sale of lands to be in writing, and signed by the party making the sale. 2 Comp. Laws, § 3179. The rule prohibits any enforcement of parol contracts; and while written contracts, which would have been lawful if unwritten, may be modified by parol subsequently in many cases, yet this cannot be done where the law requires the agreement to be in writing. Goss v. Lord Nugent, 5 Barn. & Adol. 58; Stowell v. Robinson, 3 Bing. N. C. 928; Stead v. Dawber, 10 Adol. & E. 57; Marshall v. Lynn, 6 Mees. & W. 109; Blood v. Goodrich, 9 Wend. 68. And our statute goes further than the English statute, by making the contract void, instead of declaring that no action shall lie upon it."

The special provision of the statute, that the consideration need not be expressed (section 6189), is not restricted in its application to a contract for the sale of merchandise, but is of much wider application, extending to all contracts required to be in writing by the Michigan statute of frauds. If the exposition of the Michigan statute of frauds, as contained in these cases, is to be accepted as establishing: First, that an executory contract, such as the original contract in question, must contain the price, when a price is agreed upon; and, second, that the written contract cannot be changed or varied in any of its

terms by a subsequent parol agreement,—it would follow that parol evidence of a contemporaneous agreement, and of the agreement claimed to have been made January 4, 1895, was not only properly excluded upon the ground hereinbefore stated, but also upon this additional ground, and that all evidence of an oral agreement at either date of extension of the time of delivery should also have been rejected. In this aspect of the case, upon the whole of the evidence which was or might properly have been received, it would have been the obvious duty of the court to direct a verdict in favor of the plaintiff. The suggestion in the brief that there was a delivery and acceptance under the oral contract of January, 1895, so as to satisfy the statute of frauds in this respect, is entirely without support in this record.

There are 67 separate assignments of error found in the record, on the rulings and instructions of the court below; but all of these were not relied on in the argument at bar, nor in the briefs. Most of them are rendered wholly unimportant by the views which we have expressed on questions already discussed. We have, however, examined all of these assignments, and carefully examined this entire record; and, speaking of the case broadly, we entertain no doubt that the result in the court below was right. Judgment affirmed.