# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

CAFLISCH et al. v. HUMBLE.

HUMBLE v. CAFLISCH et al.

(Circuit Court of Appeals, Sixth Circuit.   May 17, 1918.)

Nos. 3111, 3118.

1. EVIDENCE ⬳442(1)—CONSTRUCTION—PRELIMINARY NEGOTIATIONS.
   Where the terms of a written contract are full and unambiguous, parol negotiations between the parties anterior to or contemporaneous with the execution of the instrument are to be regarded as either merged in it or concluded by it, and parol evidence is incompetent to show other terms verbally agreed to previously, but not inserted in the written instrument.

2. COURTS ⬳347—FEDERAL COURTS—PLEADING—COUNTERCLAIM.
   Under equity rule 30 (198 Fed. xxvii, 115 C. C. A. xxvii), a defendant, who has a counterclaim arising out of the transaction which is the subject-matter of the suit, is required to set it up, or it is waived.

Appeal and Cross-Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit in equity by J. C. Caflisch and A. L. Caflisch, partners as Caflisch Bros., against A. R. Humble. From the decree, both parties appeal. Affirmed.

Waite, Schindel & Bayless and John R. Schindel, all of Cincinnati, Ohio, for appellants.

O. H. Waddle & Sons and Wm. Waddle, all of Somerset, Ky., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge.  Judge Cochran sustained an equitable lien in favor of the plaintiffs on lumber, on which they had made certain advancements to the defendant, and awarded damages to the defendant for their breach of contract. Plaintiffs appealed, because the net result was a judgment against them; the defendant, because he was not awarded a larger sum.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
251 F.—1

On April 8, 1913, the defendant agreed in writing to sell, and the plaintiffs agreed to buy, the output of lumber handled by defendant for two years from that date. The price named in the contract for certain kinds and grades was to be increased $2 per 1,000 feet when their thickness exceeded one inch. At least 2,000,000 feet of lumber were to be delivered. Whether the delivery of a larger amount was required or permitted need not, for reasons hereinafter stated, be determined. If the defendant at any time so desired, the plaintiffs, after inspection made by representatives of the respective parties, were to advance to him on the lumber, by way of time drafts or notes maturing in four to six months, without interest, $15 per 1,000 feet. Advancements were to be subtracted from the purchase price when the lumber was inspected for shipment and loaded f. o. b. cars at the railroad, at which time the plaintiffs were to pay the remainder due; but, if any of the notes given by plaintiffs were outstanding at the time of such loading, they were to take them up or pay an equitable portion of the interest on them, to be determined by a rule stated in the contract. A bill of sale was to be given to plaintiffs on all of the lumber on which advancements were made, and all inspections (but not the lengths and thickness of the lumber) were to be governed by the then existing rules of the National Hardwood Lumber Association. If any of the notes should become due before the lumber was received by plaintiffs, who were to receive and pay for it as fast as furnished, the defendant was to renew or pay the same himself. Should the plaintiffs furnish specifications for the guidance of the sawyer, the defendant was to conform to them in "so far as he can, not detrimental to him in the manufacturing of the said lumber." There was no stipulation as to lengths, except such as is implied in this provision. It is conceded that the contract embraced, not only such lumber as the defendant might manufacture, but such also as he might purchase from mills operated by others.

[1] Performance of the contract proceeded without friction until in July following, at which time plaintiffs sent a saw bill or specification, which the defendant was asked to "follow as closely as possible." At the same time plaintiffs claimed that, in a conversation between two of its representatives and the defendant at Cincinnati, in the February preceding the execution of the written contract, it was agreed that not more than 30 per cent. of the lumber should be poplar. The parties disagree as to the substance of that preliminary conversation. The saw bill called for a larger percentage of lumber of greater thickness and lengths than the defendant had previously furnished. The defendant promptly repudiated the claim that there was any contract between them other than the one reduced to writing in April, or that it prohibited the inclusion of more than 30 per cent. of poplar. In plaintiffs' quite lengthy letter of August 8, they allude to an agreement at the Cincinnati conference as to the percentage of lumber that should be 14 or 16 feet in length and that might be poplar, making no claim, however, as to the portion of lumber to be over one inch in thickness. That letter, correctly interpreted, admits that the parties were bound by the written contract and expresses a purpose to abide by it. That

they were thus necessarily bound is manifest. The rule is fundamental that, when the terms of a contract are full and unambiguous, as were those of the contract under consideration, parol negotiations between the parties, anterior to, or contemporaneous with, the execution of the instrument, are to be regarded as either merged in it, or concluded by it, and that parol evidence is incompetent to show terms and conditions at variance with, or in addition to, a written agreement which the parties agreed to verbally, prior to, or at the time the contract was reduced to writing, but which were not inserted in the instrument. Thurston v. Ludwig, 6 Ohio St. 1, 4, 5, 67 Am. Dec. 328; Montgomery v. Ætna Life Ins. Co., 97 Fed. 913, 917, 38 C. C. A. 553 (C. C. A. 6); Reid v. Diamond Plate Glass Co., 85 Fed. 193, 195, 196, 29 C. C. A. 110 (C. C. A. 6); Seitz v. Breweries' Refrigerating Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837.

Both parties proceeded under the contract without further complaint until February 27, 1914. In December a decline began in the lumber market and continued many months thereafter, the embarrassing effect of which is mentioned in plaintiffs' letter of January 22, in which, however, they expressed their purpose to carry the contract to completion. On February 27, they reverted to the Cincinnati conversation and charged the defendant with nonperformance, in that lumber of the lengths of 14 and 16 feet was rarely received, and that nearly all of it was only one inch thick. They informed the defendant that they did not intend to confine him absolutely to the saw bill claimed to have been furnished him at the Cincinnati conference, but informed him that:

"It is necessary that you do a good deal better than has so far developed. In making purchases of stock from other parties for our account, we wish to caution you to have these two essentials in view."

They did not assert that he had not complied with his contract as to the lengths and thickness of the lumber, all of which had been accepted by and paid for by them, but demanded that he should conform closely to the saw bill, whether his so doing was detrimental to him or not. About that time the defendant asked the plaintiffs for an advance on certain lumber, as he was authorized to do by his contract, and requested them to send a man to inspect and receive it. They answered, demanding its lengths and thickness, to which the defendant replied, insisting on the inspection and advance, which he greatly needed on account of his shortage of funds, and disclaimed his ability to give the percentage of lengths and thicknesses of the particular lumber whose inspection was demanded (doubtless due to its being in mill yards other than his own), and further declared that he had at all times complied with his contract. The plaintiffs sent no inspector and declined to make the requested advancements. This constituted a breach of their contract; and by demanding that the defendant must, not absolutely, but as far as possible, conform to their alleged saw bill, whether it was detrimental or not for him to do so, they repudiated an important provision in the agreement and sought to substitute for it another favorable to themselves and severe on the defendant. Following the letter of February 27, there was in-

sistence on the defendant's part that the lumber which he desired inspected be 'received by the plaintiffs; and, on the other hand, they demanded the shipping of that on which advances had previously been made. It would be a strained construction of the contract to hold that it conferred on them that right. If both the trial court and ourselves are in error in our conclusion that the plaintiffs violated the contract on February 27, there can be no doubt of their so doing on April 3, when they informed the defendant that:

"We will make no more advances on your stock that does not conform, at least approximately, to the saw bill that was rendered you at the time [the] signed contract was delivered."

This was clearly a repudiation of its detriment clause. We do not find that the defendant breached his agreement. There was not and never had been any inducement for a refusal on his part to saw the lumber of greater thicknesses and lengths. By so sawing it he would have economized in the cost of production and obtained a higher price than he had been receiving. The difficulty lay in the fact that the timber at his command was such as would not yield lumber other than such as he had been furnishing. To meet the requirements of the plaintiffs' saw bill would result in wastage and be detrimental to him. The evidence tends to show that the sawyers were furnished with plaintiffs' saw bill, and that they used reasonable effort, not detrimental to the defendant, to conform to it.

To prevent the defendant from selling the lumber on which advancements had been made, plaintiffs filed a bill asserting an equitable lien on the same for more than $3,200, charged a breach of the contract on the part of the defendant, and prayed for an injunction against his disposition of the lumber and for other relief. By amendment to the bill damages were claimed for breach of contract, but this claim was evidently waived, as no evidence was offered in proof of it. The defendant answered, denying breach of the contract, and counterclaimed for damages. The trial court, after a deduction to which the defendant was entitled, found in favor of plaintiffs, on account of their advancements to defendant, for $3,028.10, awarded the defendant damages for $5,839.58, and entered judgment in his favor for $2,811.48. We find no error in its so doing. The defendant's claim for damages is extravagant, being for more than $28,000. He had delivered at the time of the breach over 800,000 feet of lumber. He endeavored to show that, had the contract been completed, he could and would have furnished several times that amount. Both parties concede that 2,000,000 feet were to be furnished, the difference between them being the defendant's claim of right under the contract to deliver more. The trial judge concluded, and we think rightly, that the evidence relating to damages claimed on lumber in excess of 2,000,000 feet was not of sufficient certainty or dignity to warrant a recovery, and that damages should be allowed on such only as represents the difference between what had been furnished and the 2,000,-000 feet.

[2] The defendant's counterclaim for damages for breach of the contract in question arose out of the transaction which is the subject-

matter of the suit. Under the first clause of the second paragraph of equity rule 30 (198 Fed. xxvii, 115 C. C. A. xxvii) the defendant was required to set up its counterclaim or waive it. Portland Wood Pipe Co. v. Slick Bros. Const. Co. (D. C.) 222 Fed. 528; Electric Boat Co. v. Lake Torpedo Co. (D. C.) 215 Fed. 377, 380; Marconi Wireless Telegraph Co. v. National E. S. Co. (D. C.) 206 Fed. 295, 298. The necessary implication to be drawn from Williams v. Adler-Goldman Commission Co., 227 Fed. 374, 378, 142 C. C. A. 70 (C. C. A. 8), accords with the conclusion above reached. Whenever practicable to do so, a court of equity should do justice completely and not by halves. Camp v. Boyd, 229 U. S. 530, 551, 33 Sup. Ct. 785, 57 L. Ed. 1317; Chicago, Mil. & St. P. Ry. v. United States, 244 U. S. 351, 359, 37 Sup. Ct. 625, 61 L. Ed. 1184. The plaintiffs being nonresidents of the district from which this case came, a peculiar equity runs in defendant's favor, and he should not be sent to a distant district to try out what ought rightfully to be determined in the original suit. Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 596, 616, 617, 14 Sup. Ct. 710, 38 L. Ed. 565; Porter v. Roseman, 165 Ind. 255, 260, 261, 74 N. E. 1105, 112 Am. St. Rep. 222, 6 Ann. Cas. 718.

The judgment of the District Court is affirmed.