## Joseph James v. Bryce Muir.

*Sales of goods: Executory contract: Price.* Where a contract of sale is executory, the price should be fixed distinctly according to some standard, either of amount, or of market, or of reasonableness, or some other method of ascertainment, in order to make the contract complete and binding upon the purchaser.

JAMES *v.* MUIR.

*Sales of goods: Price.* Where goods are accepted, and nothing has been said about the price, a reasonable price is recognized as correct.

*Contract: Statute of frauds: Sales of goods: Price: Memorandum.* Where the contract is within the statute of frauds and is executory, the memorandum must name the price, as well where a reasonable price is agreed upon as where any other is; and if the price is left to be arranged by parol, the memorandum will be incomplete.

*Statute of frauds: Memorandum: Sales: Reasonable price: Market price.* Where, in such case, the memorandum is silent as to price, there is at least no implication of a promise to pay at what may happen to be the market rate, which may not always be a reasonable rate.

*Contracts: Statute of frauds: Memorandum: Incomplete instrument.* The memorandum in question in this case, which is in the form of a receipt of the price of making and delivering certain timber the year before, and an acknowledgement of certain advances (for which interest is promised) upon certain other specified timber, to be thereafter delivered at a specified time and place free of incumbrances, is held not to indicate a sale at all, by itself, as it fails to show whether the delivery of the timber was to be received as a purchase, or as security, or otherwise; it is held not to be a complete transaction by itself, but only a part of some course of dealings, and to be read and applied by their aid.

*Evidence: Contract: Separate instruments: Indivisible transaction.* And as the previous dealings between the parties embraced other instruments which belonged with this imperfect memorandum relied upon by plaintiff, and which, construed with it, and in the light of the circumstances, made out a complete and intelligible contract, of which such memorandum was only a part, the admission in evidence of such previous dealings and of these prior instruments was not error.

*Submitted on briefs November 3.    Decided January 11.*

Error to Bay Circuit.

*Holmes, Haynes & Stoddard,* for plaintiff in error.

*Hatch & Cooley,* for defendant in error.

CAMPBELL, J:

James sued Muir for a quantity of square timber delivered to the latter in June, 1873.    The declaration contains one count on special contract, one for timber sold and delivered, and agreed to be paid for at a reasonable price, and the common counts.

The special count averred a sale of four hundred and twenty-eight pieces of timber, August 6, 1872, then in Arbela, Tuscola county, and an agreement to deliver the same to defendant in Bay City in the spring of 1873 as early as the

JAMES *v.* MUIR.

ice and weather would permit; and that defendant, in consideration thereof, agreed and promised to pay the plaintiff therefor, as the same should be delivered at Bay City, the market price of square oak timber of like quality at Bay City aforesaid at the time of the delivery thereof.  It then avers a delivery and acceptance of three hundred and sixty-two pieces, and proceeds as follows: "that a portion of said timber so agreed to be delivered, to-wit: sixty-six pieces, the said plaintiff did not deliver with the said three hundred and sixty-two pieces, because the same, without his fault or neglect, while the same was being run to Bay City aforesaid, became scattered, and portions thereof wholly lost, and the said plaintiff refused to deliver the said sixty-six pieces, or any part thereof, because the said defendant wholly failed and refused to comply with and fulfill his said contract in this, that the said defandant refused to pay for said timber, or any part thereof, at a higher or greater price than fifteen cents per cubic foot;" and it then avers the market price to have been twenty-eight cents a foot.

The verdict was at the rate of fifteen cents a cubic foot, for so much as had not been paid for at that rate by advances.

The plaintiff, to make out his case, besides showing a delivery of the timber, introduced the following paper, claiming it to be a contract of sale, and to contain the entire bargain between the parties:

"PORT HURON, August 6, 1872.

"Received from B. Muir the sum of $629 00, C. cur., (six hundred and twenty-nine dollars, C. cur.) being pay in full of all demands for making and delivering square oak timber at Bay City, Michigan, for the year 1872.  Also, B. Muir has advanced to J. James $2,077 42 C. c., (two thousand no hundred and seventy-seven dollars forty-two cents, C. c.) on 428 pieces of timber now lying in town of Arbela, Michigan, measured and marked M., which said timber J. James agrees to deliver at Bay City, Michigan, in spring of 1873, as early as the ice and weather will permit, free of

all incumbrances, to B. Muir.    Interest at the rate of 10 per cent. from 1st of April, year 1872, till the timber is delivered at Bay City.    J. James agrees to pay and account to B. Muir in spring of 1873 for the within mentioned $2,077 42, C. c., with interest, advanced on said timber to be delivered in spring of 1873 at Bay City, interest at the rate of 10 per cent., C. c., from 1st of April, 1872 till the timber is delivered at Bay City in the year 1873.

"[Signed]          J. JAMES."

When this contract was produced, it appeared to have been altered, and the alteration was explained and admitted to have been made at the time of signing; the draft having expressed a rate of payment in the words "at the rate as in 1872," and nothing having been expressed as to interest on advances.

The plaintiff swore that on the delivery of the timber actually brought down in 1873, defendant was not willing to pay for it except at the last year's prices, while plaintiff was unwilling to settle on such terms on account of the arrangement in the writing.   An agreement was made to arbitrate, which was not carried into effect.   Plaintiff also swore that the balance of the timber was scattered along the river, and could not then be delivered, and had not been.

Upon cross-examination, and in other ways, a considerable amount of testimony was introduced, to which plaintiff objected, and which will be referred to presently.

Plaintiff claims that the agreement of August 6th, 1872, on which he seeks to recover, was in itself a complete and binding bargain, containing every essential of a contract of sale, except the price, which it is claimed appears by implication.

As this is a suit in which defendant and not plaintiff is the "party to be charged," and as the payment of the price is the only thing for which he is chargeable, it may be a question of some importance whether, if this paper is a contract of sale, the statute of frauds is complied with so as to bind him.   Where a contract is executory and not executed,

JAMES *v.* MUIR.

it is laid down by some authorities, if not generally, that unless the price is fixed distinctly according to some standard, either of amount, or of market, or of reasonableness, or some other method of ascertainment, the contract is incomplete, and the purchaser is not bound. Where goods are accepted, and nothing has been said about the price, a reasonable price has been recognized as correct. In *Acebal v. Levy, 10 Bing., 376,* it was held that where a contract was silent as to price, and there was evidence of a parol agreement as to price, there could be no recovery on a *quantum valebant,* and that a contract in writing was as necessary for a reasonable price as any other. In *Valpy v. Gibson, 4 C. B., 837,* where the court found expressly an acceptance of goods where the invoice was priced, *Wilde, C. J.,* remarked *obiter,* that the omission of price did not necessarily invalidate a contract of sale, and that goods were frequently sold by a contract "which does not specify the price or mode of payment, leaving them to be, settled by some future agreement, or to be determined by what is reasonable under the circumstances." In that case the court found everything had been agreed upon, and the discussion was not important, except as intimating that when the price was not mentioned, that element was not thereby fixed by implication at a reasonable or any other rate, but was open to proof. Proof that there was a parol agreement disproves the completeness of the memorandum.—*Benjamin on Sales.*

In the present case it is sufficient to say that according to *Acebal v. Levy* there is at least no implication of a promise to pay at what may happen to be the market rate, which may not be always, as there held, a reasonable rate; and the contract does not support the special count.

As the contract, whatever it may be, becomes important in another point of view, it is still necessary to determine whether it is such an instrument, as with the addition of such help as might come from the implication claimed, is complete enough otherwise to exclude parol evidence of the real nature of the agreement.

JAMES v. MUIR.

We do not think that the writing, taken by itself alone, indicates a sale at all. It shows upon its face that it is a settlement of some past transaction, in part, and that the defendant had, as early as the April previous, advanced a large sum of money on four hundred and twenty-eight pieces of timber, identified by their marks, which plaintiff was to deliver to defendant free of encumbrance the next spring, when plaintiff was to pay and account for the advances and interest.

There is nothing to indicate for what purpose defendant was to receive or hold this timber, whether as purchaser, mortgagee or factor. It is quite as consistent with a loan upon the security of the timber as anything else. It does show unmistakably that the advances must have been made on some previous arrangement, and not under this paper, because they were to bear interest from April 1st, and the writing is dated August 6th. The only definite conclusion to be drawn from the paper, assuming it to be fully binding as a contract of some kind, is, that it is not a complete transaction in itself, but only a part of some course of dealings, and to be read and applied by their aid. It is merely an agreement to deliver timber to defendant, and at the time of delivery to account for the advances and interest. It is not on its face an agreement which binds defendant to pay any money, or to purchase timber, nor is it complete in itself as an entirely independent contract for any purpose.

Without extrinsic evidence there was nothing to bind defendant under the writing. He distinctly refused, in receiving the timber, to pay any price except one which he insisted was within a former agreement. Plaintiff does not show, unless very indirectly and inferentially, what price he demanded. There was no waiver or assent which could prevent defendant from setting up his actual rights, whatever they may have been.

There was no error, therefore, in holding it competent to show by any relevant testimony all the previous relations

and dealings of the parties concerning this timber; and the written contracts and arrangements of 1870 and 1871 were relevant for that purpose.

The agreement of September 27, 1871, bound James to make, draw, raft and deliver to Muir all the square oak which "he makes in 1872, or has now made, in the spring of 1872, as early as navigation will permit, free of encumbrances;" and also bound him to use all moneys received, in buying standing timber, or skidding, making and drawing timber or rafting material, or rafting and running the timber to Bay City. It was to average at least sixty-eight feet, and if possible seventy; and it was to be paid for at one hundred and fifty dollars per thousand feet, in the following way: twenty dollars for standing oak, forty dollars for making, ten dollars for skidding, twenty dollars for hauling, and forty dollars for rafting and rafting material and running, and five dollars for towing, and fifteen dollars per thousand when delivered, with an additional five dollars if the timber sold at Quebec for three hundred and seventy-five dollars per thousand.

The present timber was got out, identified and measured, and marked by plaintiff and defendant, before or during the time mentioned in that contract, and was undoubtedly covered by it. It is also beyond question that the failure to deliver it in the spring of 1872 was a breach of that contract, unless excused, and one which might be excused by a change of time.

July 20th, 1872, an account was made up, which brought together in a single statement the timber actually delivered at that date at sixteen cents a foot, and the other expenses of the business, and included a reference to the four hundred and twenty-eight pieces in question, as "measured in the bush," showing an advance of two thousand seventy-seven dollars and forty-two cents, which is the advance referred to in the instrument of August 6th, 1872. Appended to this account is the following document: "July 20th. This is to certify that J. James has settled up in full

for year 1872, as above account shows.    And B. Muir has advanced on four hundred and twenty-eight pieces oak timber, measured in the bush in town of Arbela, two thousand seventy-seven dollars and forty-two cents, Canada currency, which amount J. James agrees to pay or account for in year 1873, when work is commenced on above timber to draw in year 1873, and agrees to deliver said timber at Bay City to B. Muir, interest at ten per cent., Canada currency, from 1st of April, 1872, till the timber is delivered at Bay City. J. James."

This originally did not contain the last clause, which provides for interest, and fixed the price at rates of 1872. The change was made at the time the agreement of August 6th was made, and so as to make the two correspond.

It will be observed that the only essential difference between these two papers as originally drawn is, that the July paper required James to account for the advances as soon as work was commenced on the timber, while the August paper postponed it until delivery of the timber.    The change as to price and interest was made at the same time.

Under these circumstances we think the writings all belong together, and that there could be no presumption of a change beyond the writings, until established by distinct evidence. There is no ambiguity whatever in either of these papers, when so construed, while, without this connection, neither of them is complete, and neither would make out a contract of sale, or any other contract on which plaintiff could have a right of action.    The evidence that all these papers existed, and that the timber was got out and measured so as to come within the agreement of 1871, is not disputed. The result is inevitable that the instrument of August, 1872, is either a supplement to that of 1871, or else is invalid entirely, for want of a compliance with the statute of frauds, which, whatever may be the rule as to price, requires that the memorandum shall at least show all the other terms of the contract, and especially must show that it is a contract of sale.    The parol negotiations were merged in the writing.

JAMES v. MUIR.

Whatever may have been the reasons which led to the peculiar form of the writing when made, it must speak for itself. And the reference to an advance on the timber, made and to be credited as of a period within the life of, and before any default in, the contract of 1871, precludes the claim that the writing was an entirely new agreement. If the advance had been made at the date of the paper, the case might have stood on different grounds; but the language incorporates the advances as an essential element in the transaction, and as having been connected with some sort of claim upon the timber which was to be respected. The only claim shown by either party at the time the advances were made was the contract of 1871, then in full force, and with that and the paper of August 6th a complete written contract is made out upon the new basis.

The question whether any arrangement was made about the price after August 6th, 1872, was left by the court where the parties had been satisfied to leave it. The jury must have found there was no new bargain made after August 6th.

We do not think it material what was the precise extent of defendant's specific interest in the timber under the contract of 1871, after it was got out and identified and marked, because it would not change or affect any question involved here. If he had any rights at all, and the new contract did not abrogate them, the case was fairly left to the jury.

The judgment must be affirmed, with costs.

GRAVES, J., and COOLEY, CH. J., concurred.