WALDO BLOOD *vs.* GEORGE T. DEWEY, JUNIOR.

Worcester.    March 8, 1945. — March 28, 1945.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Landlord and Tenant,* Contract of letting, Repairs. *Contract,* What constitutes. *Practice, Civil,* Charge to jury. *Words,* "Agreement."

In view of full and accurate instructions to the jury in an action by a tenant at will of a store for damage to his goods alleged to have been due to negligence of the landlord in making repairs under a contract to repair, a statement to the judge by the jury, upon returning for further instructions, that they found that the original "agreement" of letting "between" the parties did not touch upon repairs and that subsequently the landlord "agreed" to make certain repairs when the tenant directed his attention to the necessity therefor, and a request by the jury for instructions upon the question, whether "the second agreement to make repairs" constituted "a contract" and whether it affected "the first agreement," showed that on their findings there was no more than a gratuitous undertaking to repair on the part of the landlord; and it was proper so to instruct the jury in answer to their question.

At a trial where the jury, after deliberating, stated to the judge certain material facts found by them and requested further instructions upon a specified question, the judge need not repeat full and accurate instructions which he had given before the jury retired, nor discuss the evidence, nor give further instructions beyond those necessary to answer the particular question asked.

TORT. Writ in the Superior Court dated August 30, 1940.

After the sustaining of exceptions in a decision reported in 315 Mass. 500, there was a second trial of the action before *Dowd*, J., at which the jury returned a verdict for the defendant. The plaintiff alleged exceptions.

Parts of the charge at the second trial were as follows: "Now, a mere promise to make repairs carries with it no responsibility whatever. If I promise to make repairs and I never make them, there is no responsibility. If I say I will make those repairs and you go ahead and become a tenant, if I do not make them there is no responsibility on me, but the minute I undertake them then I am called on to make them in a reasonably careful way as a reasonably careful man would make them; and if I fail in that and as a result of my failure in the negligence which I employ in performing services to repair and damages result to the tenant, than I am responsible for damages. That is, if there is a contract to make those repairs. If there is no contract, then there is no law applicable to this case. But if there was a modified contract, then that is the law applicable to the case, I am responsible to use ordinary care in making those repairs. If you find there was no contract at the time, but some time later when there was a leak and the skylight leaked or the roof leaked and Mr. Dewey went down and looked over the premises and said to the plaintiff, 'All right, I will fix them up, or I will make them right;' in that case, gentlemen, that is what is known as a voluntary undertaking; it is not part of the original contract. That is a voluntary undertaking for which I was not bound in my original contract, and in that case I would be only guilty of gross negligence in making those repairs. On the evidence in this case I will say to you there is no

evidence that would warrant you in finding there was gross negligence in this case. . . . So, gentlemen, I am going to resume again the obligations of the parties here so you may have them quite clearly in mind. If you find, gentlemen, that at the time these parties first came together there was a completed contract and all the terms of the tenancy were at that time settled by the parties, and if you find at that time nothing was said about repairs, then there would be no obligation on this landlord to make repairs. If, however, you find a little time later the plaintiff went to the defendant and complained of a leak in the roof, and as a result of that complaint there was a new arrangement made and new understanding and new contract, and under that contract if you find that the defendant promised to make the repairs, why then the liability differs. If he does not make any repairs there is no liability whatever on him; but if he starts in to make repairs and makes them negligently so the plaintiff is injured, then the landlord is responsible for that. But if you find there was no contract to make repairs at all, then the mere fixing of what was termed later was a skylight, if you find that was the only repair made and there was no contract before, then the responsibility on the landlord would be for gross negligence only, and I have said there is no evidence here that would warrant your verdict on gross negligence. . . . The other question is with reference to the situation which arose at the time of the second conversation between Mr. Blood and Mr. Dewey. If there was at that time a different arrangement made of course, the arrangement must have a consideration to be a binding arrangement, someone must lose something and someone must gain, no matter how little, to have consideration for a contract. If you find under the circumstances there was at that time any intimation of word from Mr. Blood if the repairs were not made he would not move in; and if, on the other hand, Mr. Dewey said, 'Well, I will make repairs,' you would find then there was sufficient consideration for such a promise, if you find that to be a fact. But if you do not find that to be a fact, then there was no consideration for that promise."

In this court the case was submitted on briefs.

*C. W. Proctor & J. F. Killeen*, for the plaintiff.

*L. E. Stockwell & C. N. Dewey*, for the defendant.

RONAN, J. It was decided when this case was here before, *Blood* v. *Dewey*, 315 Mass. 500, that whether the damage to the plaintiff's stock of wallpaper in a store which he occupied as a tenant at will of the defendant was due to the negligent repair of a leak in the roof which the defendant had assumed to repair in accordance with a contract made with the plaintiff, or whether the repair of the leak was a gratuitous undertaking by the defendant for which he would not be liable in the absence of gross negligence in making the repair, was a question of fact, and that there was error in instructing the jury that there was no consideration for any contract to repair.

At the second trial, there was evidence that in the early part of November, 1935, the plaintiff inquired of the defendant whether he had a certain store to rent. The defendant replied that he would let the store to the plaintiff at $50 a month, the tenancy to begin on the first of January, but that the plaintiff might have possession through December so that he might make such changes in the store as he desired in order to fit it up for the sale of paint and wallpaper. The plaintiff learned in December that the roof leaked and told the defendant that he would not move in unless the defendant repaired the roof, and the defendant said he would take care of the roof, and about a week later the plaintiff received the keys and moved in his stock of goods. There also was evidence that the plaintiff and the defendant agreed upon the terms of the tenancy at their conference early in November, 1935, and that there was no mention of repairs then or at any time thereafter until sometime in January, 1936, when the defendant was informed by the plaintiff that there was a leak in the roof and went to the store and told the plaintiff he would repair it. The defendant's agent repaired this leak. There was also the report of an auditor that the repairs made in January, 1936, were properly done and were gratuitously performed by the defendant. But there was testimony that this work was negligently done

and that as a result the plaintiff's stock of wallpaper was damaged by reason of a leak in the roof on March 18, 1936.

The entire charge to the jury is contained in the bill of exceptions. The instructions were apt, accurate and complete. Neither party took any exceptions to these instructions. The jury retired and reported the next morning that they were unable to agree. They were given additional instructions and resumed their deliberations. The jury then returned to the court room and submitted a written request for further instructions, which stated that "We agree that the first agreement between the plaintiff and defendant, wherein the plaintiff agreed to occupy the premises for a certain rental did not include a proviso that the defendant was to make any repairs. Later the plaintiff called to the defendant's attention some needed repairs, and the defendant agreed to make the repairs, and did make them. This question has arisen: did the second agreement to make repairs constitute a contract and did it in any way affect the first agreement?" The judge replied, "The answer to that is no. If you find that there was no agreement in the first place for the tenancy providing for repairs and later repairs were suggested, then the repairs made then was a voluntary undertaking under the aspect of this evidence by the defendant. And in fact, as I told you before, if those repairs were made the defendant would only be liable for gross negligence. I have already informed you that the evidence would not warrant your finding of gross negligence in this case." The only exception of the plaintiff is to these instructions. The jury returned a verdict for the defendant.

After finding that the first agreement fixing the terms of the tenancy did not contain any provision obligating the defendant to make repairs, the jury informed the judge that, subsequently to this first agreement, the plaintiff directed the defendant's attention to certain repairs which the defendant agreed to make and did make. Their first inquiry was whether the second agreement to make repairs constituted a contract. It may be, as the plaintiff contends, that the jury used the terms agreement and contract in their written request submitted to the judge as if they were syn-

onyms. The terms have frequently been used in this sense, and on the other hand the word agreement has sometimes been employed to designate a promise or undertaking of one party only. *Packard* v. *Richardson*, 17 Mass. 122. *Marcy* v. *Marcy*, 9 Allen, 8. *Gurman* v. *Stowe-Woodward, Inc.* 302 Mass. 442. What is important here is that the jury made a distinction between an agreement to repair and a contract to repair in the first part of the double question which they asked the judge. They were in doubt whether an agreement by the defendant to repair made in the circumstances mentioned in the request, which we assume were all the facts that they found which led up to and were included in the agreement, amounted to a contract. It was on those facts that they desired the assistance of the judge in order to enable them to arrive at a correct conclusion. There is no finding that the plaintiff did anything more than to direct the defendant's attention to certain repairs which the plaintiff apparently wanted him to make. There is no mention of any consideration with reference to this agreement to repair. This is significant in view of the instructions which had been given to the effect that "the arrangement must have a consideration to be a binding arrangement," and that if there was no previous contract to repair but the defendant went to the shop at the time of the leak and said he would "fix it" and he did, that would be a voluntary undertaking. It was not necessary for the judge to repeat the instructions that he had given when the case was first submitted to the jury, or to point out again the difference between a repair gratuitously undertaken by a landlord and one made in pursuance of a contractual obligation which the landlord had assumed. Viewed in the light of what had occurred at the trial up to the time the request was submitted to the judge, it is plain that the facts recited by the jury show that they were dealing with a gratuitous undertaking by the defendant. The judge was right in deciding that upon the facts stated in the request there was no contract to repair and that the defendant's agreement to repair amounted to no more than an undertaking gratuitously assumed, and in so instructing the jury. *Bailey* v. *First Realty Co.* 305 Mass.

306. *Greenway Wood Heel Co. Inc.* v. *John Shea Co.* 313 Mass. 177. *McNeill* v. *Home Savings Bank,* 313 Mass. 664, 668.

The jury had already made up their minds as to certain facts and were endeavoring to decide whether there was a contract to repair. The judge acted prudently in not discussing the evidence and in confining the instructions directly to the specific inquiry of the jury. *Kellogg* v. *French,* 15 Gray, 354. *Nelson* v. *Dodge,* 116 Mass. 367. *Kinnear* v. *General Mills, Inc.* 308 Mass. 344. *Goltz* v. *Besarick,* 313 Mass. 14.

*Exceptions overruled.*