(No. 31244.—

MARY E. HANLON *et al.*, Appellees, *vs.* DORETTA R. HAYES
*et al.*, Appellants.

*Opinion filed November 22, 1949.*

HENRY E. PRATT, and WAYNE H. MATHIS, both of
Peoria, for appellants.

CLYDE CAPRON, and VERLE W. SAFFORD, both of
Peoria, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

Mary E. Hanlon and other heirs-at-law of Mary A.
Hogan, deceased, filed a bill for partition of certain real
estate in the circuit court of Peoria County against Doretta
R. Hayes *et al.*, the remaining heirs and occupants of the
premises. The defendant Doretta R. Hayes and her hus-
band answered, denying plaintiffs were entitled to the relief

prayed in the bill of complaint, and filed a counterclaim alleging that they had a binding contract with all of the other heirs to purchase the said property, and made the necessary and proper allegations entitling them to specific performance, if the facts alleged were proved. The three plaintiffs filed a reply setting up the Statute of Frauds, in that the writing was not sufficient to entitle said defendants to specifice performance. The remaining heir, Robert A. Hogan, having also agreed by a separate contract to sell his interest to appellant, did not contest the suit for specific performance.

The facts are simple. The tract involved consisted of eighty-four acres of land, a small portion of which was tillable, but which was occupied by appellants, Doretta R. Hayes and her husband, Charles F. Hayes. They paid rent for the use of the land. Some of the interested parties desired to obtain their share from the estate, and attempts were made to sell the property, but no offers were received. All of the parties except Robert A. Hogan met at the home of Mrs. Hanlon, for the purpose of reaching some kind of an agreement about the land. The evidence tends to show that the appellants had previously offered $150 per acre, but at this meeting Mrs. Hayes made an offer of $152.50 per acre, upon which one of the plaintiffs said "if you make it $155 per acre you can have it." This price was agreed to by all of the parties present, including Mrs. Hayes. The brother, Robert A., who was not present, afterwards made a separate agreement to the same effect.

The writing prepared at that time purports to read as follows:

"Received from Doretta Hayes.
One Hundred Dollars.
September 2, 1946. as payment on 84 acres farm of Mary A. Hogan, Estate, at $155. an acre, balance to be paid when deed and abstract are presented."

It bore the signatures of Mary E. Hanlon, Teresa J. Hogan, Agnes C. Case and Doretta R. Hayes. It is admitted that this document was signed, but it is alleged in the reply to the counterclaim that the words "at $155. an acre," were not in the writing when plaintiffs signed it, but were afterwards inserted. It is also admitted that these words were not in the writing as first written, but defendants say that when they read the writing over, after its preparation, they observed that the amount of the consideration was not in the writing and a pen was borrowed from one of those present and the consideration was written in. This is denied by all of the plaintiffs, their contention being that it was never in the writing, but was placed in subsequently without their knowledge or consent.

There is no disagreement as to the fact that there was an oral meeting of the minds of those present to sell the land to Mrs. Hayes for $155 per acre. The plaintiffs admit that they were dissatisfied with the price and refused to go through with the transaction. The circuit court held that the counterclaimant had failed to establish that the words "at $155. an acre" were in the contract at the time it was signed by the plaintiffs; and further held that with those words absent from the memorandum it would be an insufficient writing upon which to base a decree for specific performance, dismissed the counterclaim and entered a decree for partition. This appeal follows.

Assuming that the contract would be sufficient were the memo as claimed by appellants, the question arises what would be the effect of this same written memo with the words fixing the amount per acre stricken from it. It is the contention of appellants that the statute expressly provides that it is not necessary to set out the consideration in the memo in order to comply with the Statute of Frauds, referring to section 3 thereof, as follows: "The consideration of any such promise or agreement need not be set forth or expressed in the writing, but may be proved or disproved

by parol or other legal evidence," (Ill. Rev. Stat. 1947, chap. 59, par. 3,) and therefore the contention is made that these words are mere surplusage, and that the contract would be equally effective without them.

It has been held many times in this State that in order to decree the specific performance of a contract for the sale of real estate the contract must be definite and certain in its terms and conditions, contain the names of the vendors and vendee, a description of the property sufficient to identify it, the price, and the terms and conditions of the sale, together with the signatures of the parties to be charged. (*Leach* v. *Hazel,* 398 Ill. 33; *Stein* v. *McKinney,* 313 Ill. 84; *Elwell* v. *Hicks,* 238 Ill. 170.) It would seem that this well-established rule is in conflict with section 3 of the Statute of Frauds, at least in so far as it requires the memorandum in writing to contain the price or consideration to be paid.

The language of this particular section and the reasons for its enactment must be carefully studied, and its history be known, to understand its proper application to the different contracts brought within the Statute of Frauds. As originally enacted in 1676 this statute provided that no action could be maintained upon any agreement upon six diverse kinds of actions, unless such agreement or a note or memorandum thereof was in writing, and signed by the parties to be charged. The several kinds of agreement requiring this writing were: (a) charging an executor on a special promise to pay out of his own estate; (b) one made to answer for the debt, default, or miscarriage of another; (c) an agreement made in consideration of marriage; (d) one not to be performed within the space of one year; (e) an agreement for the sale of real estate; and, (f) the sale of personal property above a certain value. These provisions, except the last, were incorporated in the law of Illinois at an early date, and the last provision enacted into law within recent years.

The contracts thus described in general terms in the Statute of Frauds include many different transactions besides land contracts, such as guaranties, sureties, endorsers, warranties, rents, and others that may appear from a study of the early construction of the act. Land contracts were included, among other reasons, because appearing in the preamble of the act is the following: "For the prevention of many fraudulent practices commonly upheld by perjury * * * all leases, estates, interests of freehold or terms of years * * * made or created by livery and *seisin* only, or by parol, and not put in writing * * * shall have the effect of a lease or estate at will and no other;" and then follows the body of the act, with its requirements that the memorandum for such conveyance be in writing. Stat. 29th, Charles II, chap. 3.

At the time this act was enacted, about three hundred years ago, when land could be conveyed by the delivery of a clod or piece of turf, in the presence of witnesses, and commerce was in its infancy, the vast reach of the act was not fully anticipated. Its early construction mostly concerned the mercantile law and contracts involving personalty, as where the transaction involved a surety or an endorser, and many fine distinctions were made. When the question arose as to whether the consideration for the agreement should be in a written memorandum, it was decided in *Wain* v. *Warlters,* 5 East, 9, 2 Smith's Leading Cases, 305, that since the statute required the agreement or memorandum to be in writing, and a consideration was necessary for a valid agreement, such consideration must appear in the memorandum. This decision was followed by the English Courts, and by most American courts, and by Illinois in *Patmor* v. *Haggard,* 78 Ill. 607.

The hardships and inconveniences of this rule as applying to commercial transactions in Great Britain brought about a statute amending the provision requiring the consideration to be specified in the contract to answer for the

debt, default, or miscarriage of another, by providing such contract could be enforcible although the consideration did not appear in writing upon its face. (19 & 20 Vict. chap. 97.) The same course was substantially followed in this State. The *Patmor case* involved the promise made in 1869, to answer for the debt of another, and the Illinois statute, as it then existed, was given the same construction as that given in England. Later, in 1874, doubtless because of this decision, as well as the change in the Statute of Frauds in England, section 3, as set out above, was enacted, but made general in its terms and not limited to the debt, default, or miscarriage of another.

No case in Illinois construing this section has been called to our attention, except that of *Ullsperger* v. *Meyer,* 217 Ill. 262, which does no more than refer to the section, because the memorandum involved therein expressly set out the consideration to be paid. Section 3, as written, is easy to apply in contracts involving debts or defaults of another, or those regarding the sale of personal property, because of the adoption of the Negotiable Instrument and Sales Acts, as well as the ability to establish consideration by number or amount, where there is a market value which is presumed the amount paid, where no price is specified. It might even be easily applied in rental contracts where the reasonable rent may be ascertained, or in cases where the rental is fixed by law, but it becomes difficult in its application and effect when it is applied to contracts relating to the sale of real estate, where in the great majority of cases there is no reasonable or fixed value which can be applied to the sale of a given tract of land, because it may vary in value, depending upon a great number of circumstances that make lands desirable or salable.

While the rule of *Wain* v. *Warlters* is adopted in perhaps a majority of the States, it is to be observed that most of them do not have a provision similar to section 3 of our Statute of Frauds. Such a provision, or one similar

thereto, has been enacted in few of the States, and the construction placed upon it in such States will be helpful in construing our statute, where its construction becomes directly involved. We have a general rule of construction which comes to our aid, and that is, in enforcing a contract for the sale of real estate the agreement or memorandum may not lay partly in writing and partly in parol. Its essential terms must be wholly in writing. *Crocker v. Smith*, 366 Ill. 535; *Stein v. McKinney*, 313 Ill. 84; *Kopprasch v. Satter*, 331 Ill. 126; *London v. Doering*, 325 Ill. 589; *Wright v. Raftree*, 181 Ill. 464; *Weber v. Adler*, 311 Ill. 547.

In the instant case, we have a situation where beyond question the price was agreed upon. The price feature is claimed to have been improperly placed in the memorandum so that the contract, as the appellees contend, now becomes a mere statement to sell, without fixing any consideration. The rule laid down in Browne on the Statute of Frauds, section 376, is: "The memorandum must contain the express stipulations of the contract. Thus, it must contain the *price* agreed upon to be paid for property sold where the contract contained a stipulation as to price, and when the memorandum states one price, no recovery can be had if it be shown that the parties had really agreed for another; for the true contract is, as to one of its essential elements, left unsupported, the memorandum being shown to be not an accurate statement of the contract which the parties made." This statement is sustained by many of the older authorities.

In 27 C.J. 284, it is stated that where the parties have stipulated as to the purchase price, it is an essential term which must be included in the memorandum, but it need not be recited in the writing, where the parties have not named a price. The cases from other States, where this point has been raised, sustained the statements of these texts. (See: *Stewart v. Cook*, 118 Ga. 541, 45 S.E. 398;

*Stapleton* v. *Muscogee Guano Co.* 29 Ga. App. 199, 114 S.E. 906; *Burlington Grocery Co.* v. *Lines,* 120 Atl. (Vt.) 169; *Hanson* v. *Marsh,* 40 Minn. 1, 40 N.W. 842.) In *Mueller Furnace Co.* v. *Battin Stove Supply Co.* 79 Col. 418, 246 Pac. 272, where the point was specifically involved, the court comments: "The case depends entirely upon whether the price or consideration was fixed at the time of the oral contract. If it was fixed  *  *  *  the plaintiff in no event may recover, because the price being fixed it was an essential part of the agreement, and must under the authorities have carried into the memorandum." The same has been held in Michigan, where a statute similar to ours is in force. *James* v. *Muir,* 33 Mich. 223.

And in *Reid* v. *Diamond Plate-Glass Co.* 85 Fed. 193, C.C.A. 6th. Cir., construing the Michigan law, it was held that it established two things: (1) That an executory contract must contain the price, when the price is agreed upon; and (2) that the written contract cannot be changed or varied in any of its terms by a subsequent parol agreement.

Looking, then, at the words of the statute, we observe that it recites: "The consideration for any such promise or agreement need not be set forth or expressed in the writing." It becomes important to know to what reference is made by the words "for any *such* promise." This provision is a part of the general statute, which prevents actions in many cases unless a writing or memorandum of the writing is made. Personal actions are described in one section, and actions affecting real estate in the other. Section 1 provides "no action shall be brought  *  *  *  upon any special promise to answer," or "upon any *agreement.*" The word contract is not used. Section 2 recites "no action shall be brought  *  *  *  upon any *contract* for the sale of lands," etc. It will be noted that in one place reference is made to a promise or agreement, and, in the section referring to land, to a contract. In section 1, undoubtedly the words "promise" and "agreement," used in different

portions of the section, are used interchangeably as either "promise" or "agreement," but in section 2, there is no interchangeable word for that of "contract" used therein. Section 3 refers back to something which has gone before, but the only place in which the words "promise" and "agreement" are found is in section 1, and not in section 2.

It has been held that the term "contract" is broader than the term "agreement," (*Patmor* v. *Haggard*, 78 Ill. 607; *City of East St. Louis* v. *East St. Louis Gas Light and Coke Co.* 98 Ill. 449; *Blood* v. *Dewey*, 318 Mass. 79, 60 N.E. 2d 347;) and surely more so than the word "promise," so we are justified in believing that when section 3 was placed in the statute, using the words *"such promise or agreement,"* it referred to section 1, where identical words are used, and thus comports with the many instances since, where we have specifically held that the memorandum of contracts for the sale of land must specify the consideration agreed upon, to be enforcible by specific performance. In fact, in *Wood* v. *Davis*, 82 Ill. 311, shortly after section 3 was added to the statute, we held that the memorandum must contain the price or consideration paid to enforce a contract for the sale or purchase of real estate.

Where a long and uniform line of authorities for over half a century hold the consideration must be mentioned in the contract for sale of real estate, we must believe that the courts have considered the promises and agreements to which section 3 applies, (and the many cases apparently contrary to the provisions of section 3,) and conclude it must be taken to mean that said section 3 is applicable only to the cases mentioned in section 1, where identical words are used in describing the cases that come within the added section. Interpreted in this manner our prior holdings are logical and in conformity with the statute, as long applied by usage and interpretation. Sutherland Stat. Const. Vol. II, sec. 477.

Section 3 is peculiarly applicable to promises to answer for the debt or default of another, or matters involving sales upon public markets, or where a customary price or trade practice prevails, but is inappropriate to leave such an important element absent in a contract for the sale of land, where quality, location, improvements and conveniences play such an important part in fixing a consideration.

We think that under the law we must construe the words "at $155. an acre," as a necessary part of the written memorandum, because it is agreed by all of the parties interested that that was a part of the contract for the purchase of the real estate, and the law provides that no action may be maintained upon such a contract, *viz.,* the entire contract, unless the memorandum or note thereof is in writing, signed by the party to be charged.

The court found expressly that counterclaimant had not established that the words in question were in the written contract at the time the plaintiffs signed it. If they were not there at that time they were improperly placed there, unless the plaintiffs authorized it. That is denied. We are obliged to follow the findings of the chancellor unless they are manifestly against the weight of the evidence, and we cannot say that such is the fact. Looking at the contract with the words "at $155. an acre" deleted from the writing, it does not manifest the contract between the parties. It is not the memorandum or note thereof in writing required by the statute, and consequently will not sustain an action for specific performance to enforce the sale of real estate.

Both parties have cited a multitude of cases, none of which, except the *Patmor case,* 78 Ill. 607, and the *Ullsperger case,* 217 Ill. 262, even refer to section 3 of the Statute of Frauds. And, moreover, it is to be observed that in substantially all of the cases cited the consideration or price was either named, or a means provided in the writing by which it could be fixed. Appellant relies upon *Elwell* v.

372

*Hicks,* 238 Ill. 170, but, while section 3 is mentioned, it is distinctly held that the writing must contain the *price* to be paid, to comply with the statute. Such authorities are clearly not pertinent to the question as to whether the writing, as it existed at the time it left the hands of both parties, was sufficient in itself to sustain the action.

Other points are argued in the briefs of the respective parties, but discussion of the same is unnecessary because the deficiency of the counterclaimant's memorandum is fatal to her right to specific performance.

The decree of the circuit court of Peoria County is affirmed.