MacLeod-Mancuso, BONNIE H., J.
This matter is before the Court on Defendants,’ Middlesex County Sheriffs Department (Department), Paul Tierney (Tierney), Horace Coward (Coward), David Ellison (Ellison), and Terry McCarthy (McCarthy), motion for judgment notwithstanding the verdict, or in the alternative, for remittitur of punitive damages against Plaintiff Rajkumar Bhaduri (Bhaduri). Bhaduri opposes Defendants’ motion, urging the Court not to vacate the judgment, and in the alternative, has moved for a mistrial and a new trial on all the issues.
In March 2006, a jury heard Bhaduri’s case, in which he alleged discrimination by the Department based on his national origin or race pursuant to G.L.c. 15 IB, §4(1) (count one); retaliation by the Department pursuant to G.L.c. 151B, §4(4) (count two); intimidation, coercion, threats, interference, and aiding and abetting by all Defendants pursuant to G.L.c. 151B, §§4(4A), 4(5) (count three); and intentional interference with advantageous contractual relations against all Defendants (count four).[2] On March 8, 2006, the jury returned a verdict in favor of Bhaduri and against the Department only on count three, awarding Bhaduri $25,000 in compensatory damages and $75,000 in punitive damages.
For the reasons set forth below, Defendants’ motion for judgment notwithstanding the verdict is DENIED, and Bhaduri’s motion for a new trial is ALLOWED with respect to count three only.

BACKGROUND

On June 25, 2001, Bhaduri filed an action against the Department, and supervisory personnel within the Department: Tierney, Coward, Ellison, and McCarthy. Bhaduri’s complaint alleged that the Department discriminated against him because of his national origin or race, the Department engaged in retaliatory conduct, all Defendants threatened him because of his national origin or race, and that the individually named supervisory Defendants interfered with his contractual relations.
Bhaduri presented evidence at trial that his coworkers harassed him because he was Indian.[3] Bhaduri submitted evidence such as a personal journal, medical records, and his own testimony to demonstrate that the harassment by his coworkers was severe and pervasive.[4] Bhaduri also testified that he reported the harassment to Marie Morando, the Secretary to the Middlesex County Sheriff, who discussed the issue with Martin Gabriella, who then spoke with Kieman Lennon, who conducted an investigation.[5] Bhaduri testified that he complained of the harassment to McCarthy, and to Edward Dyment, a shift commander, but neither supervisor took any action to remedy the problem. Further, Bhaduri pointed to sections of Tierney’s deposition which allegedly showed that Tierney knew, or should have known that Bhaduri was subjected to discrimination and/or retaliation. McCarthy testified that Bhaduri discussed the harassment with him first, at which point McCarthy spoke with Coward.
The Defendants presented evidence that neither the supervisors named nor the Department knew or should have known of any discrimination or retaliation against Bhaduri by correctional officers. Coward contradicted McCarthy’s testimony and stated that he never spoke with Bhaduri or with McCarthy concerning any harassment.
*330 On March 6, 2006, Defendants brought a motion for a directed verdict. In pertinent part, Defendants asserted that Bhaduri failed to present evidence that he feared retaliation. Defendants argued that the Department had a policy against discriminatory or retaliatory conduct and had a workable procedure for complaints. As a consequence, it was incumbent on Bhaduri to show that his complaint would not be taken seriously. Defendants argued that because there was an effective policy in place, as demonstrated by Bhaduri’s invocation of the policy in August 1997, Bhaduri’s failure to use the policy to complain of the acts which took place in 1999 and 2000 compelled the Court to grant a directed verdict in favor of the Defendants. The Court allowed the motion for directed verdict only as to count four, intentional interference with contractual relations, with respect to Tierney.
On March 7, 2006, after closing statements, the Court provided the jury with a special verdict slip, which consisted of four questions.[6] The Court’s instructions included language explaining the law as to the liability relationship between the Department, the named supervisors (Defendants Tierney, Coward, Ellison, and McCarthy) and unnamed supervisors (Dyment, Roebuck, and Moore) and correctional officers within the Department.[7] Neither party objected to the Court’s instructions after the Court charged the jury.
Approximately two and one-half hours after the jury began deliberations, it returned with a question for the Court. The jury question stated: “Question three: Does Middlesex County Sheriffs Department include who? C.O.’s, only upper management, Coward, Ellison, McCarthy? Can we say ‘yes’ to the department and no to individuals, or vice versa.” The Court and the parties discussed whether the evidence presented addressed the Department’s liability with respect to supervisors and/or coworkers. Defendants objected to the Court’s inclusion of coworker liability in its response to the juiy because “the evidence in this case as [sic] directed entirely to supervisors and not to the C.O.’s my understanding was the supervisors and their failure to supervise that was at issue here, and ... it was never explicit that the C.O.’s were involved here as to liability.” R. 7-107, 7-108, 7-111. Bhaduri argued that he did not abandon the C.O. aiding and abetting claim as evidenced by the complaint, depositions, and the evidence presented at trial. R. 7-120, 7-121, 7-122. In particular, Bhaduri presented evidence that C.O.’s McBride, Nionakis, and Carvello continuously harassed Bhaduri and created an environment that was severe and pervasive.
At this point in the discussion, the Court recognized that neither party presented a specific instruction on special verdict slip Question 3. The Court became concerned with its failure to define the terms contained in Question 3, namely “aiding and abetting and coercing,” and questioned whether Bhaduri presented sufficient evidence for count three to go to the juiy. R. 7-112.
The Court responded to the jury by stating:
Let me answer your question backwards. The latter part of your question is: “Can we say ‘yes’ to the department and ‘no’ to the individual defendants, and vice versa?”
And the answer to that is yes. It’s not mutually exclusive. You could find some, or all of the individual defendants. You could say yes or no, depending obviouslyjust as to them, you could decide one had, one hadn’t, none had, some had, all had. You can do likewise with the department: You could find that the department had engaged in the same activity and not find that the individuals had, and vice versa, just so you know. And then you would just go on to the issues of damages . . .
But then we go back to the earlier part of the question which is: “Does the Middlesex County Sheriffs Department include whom?” And that I think is a good question - the C.O.’s, upper management. And I know why this question is asked because in the first two questions we’re talking about “supervisory personnel.” And I did read for you a definition of “supervisory personnel” as being anyone in a position to supervise, discipline, or control the plaintiff in his employment activities. So that would not just include the three defendants named here, but various lieutenants or others who you may have heard evidence about but supervisors.
So then we get to this question, and we don’t limit it to supervisors. And there’s a reason for that. . . it encompasses I guess everyone within the work environment. That is, for example, co-employees would not be in a position to engage in activity that has been alleged, if it happened, but for the fact they were employees and just, ergo, employed by the Sheriffs Department.
So the answer to your question is: That it includes individuals employed by the department who interacted with Mr. Bhaduri regardless of their status. R. 7-127, 7-128, 7-129.
After the Court sent the juiy back out to deliberate, Defendants renewed their objection to the inclusion of coworker liability as part of the Court’s instruction to the juiy. R. 7-129, 7-130.
On March 8, 2006, the Court again met with the parties to discuss the propriety of the juiy instructions. The Court questioned whether it was appropriate to impose vicarious liability on the Department for the actions of its coworkers.[8] The Court reiterated its concern that absent from the instructions related to Question 3 was any explanatoiy language of the stat-utoiy terms. The Court stated that it should have included:
*331 very, very definitive instructions on what all those words mean [under 151B, §§4(A) and (4)(5)]. And we never - it wasn’t presented either in argument when I gave a description of the case to the jury, as the case proceeded, and as the case went to trial, as the case was finally instructed to the jury . . . And the problem I have is that the language that was put in the question says: “By intimidation, coercion, threats.” ... I think my larger problem is no instructions were given to the jury, I mean none, on that language they had gotten no instructions whatsoever as to what constitutes a threat, what constitutes coercion, what constitutes intimidation. I can’t say you get to decide for yourself. Heck we have to define for people what a breach of contract it [sic]. How in God’s name do we expect them to pull out of thin air what coercion and intimidation and all this other stuff is? And I don’t believe you know it when you see it is the type of instruction we should be throwing in their laps.
And I am inclined at this point in time to withdraw from their consideration question three. R. 8-3, 8-4, 8-5.[9]
In response, Bhadüri contended that because the Court had defined “retaliation” and “discrimination,” the most confusing of the statutory terms, and given the instruction using the exact statutory language under G.L.c. 151B, §§4(4A), 4(5), the jury was capable of reaching a verdict on Question 3. R. 8-7. Bhaduri also emphasized that the Defendants did not request a jury instruction on Question 3. R. 8-12. Bhaduri then suggested that the parties draft ajury instruction defining the statutory terms. R. 8-14, 8-22, 8-26. After the Court rejected that suggestion and expressed interest in taking Question 3 away from the jury, Bhaduri offered to withdraw Question 3 if the jury could be told, under Questions 1 and 2, that the plaintiff is entitled to damages if any employee of the Sheriffs Department discriminated against Bhaduri or if any employee of the Department retaliated against Bhaduri.
Defendants requested that Question 3 be withdrawn and that Questions 1 and 2 remain as previously stated because the questions in their current form accurately represented the theories on which the case was presented. R. 8-29. After lengthy discussions, the Court opted to leave the jury alone with its deliberations without taking away Question 3 and without altering Questions 1 and 2. Bhaduri objected to the Court’s refusal to amend Questions 1 and 2 to include coworkers and the Court’s refusal to add explanatory language defining the terms used in Question 3. Bhaduri moved for a mistrial on those grounds to be ruled on after the jury returned with a verdict.
On March 13, 2006, the jury returned a verdict in favor of Bhaduri on Question 3 against the Department only and not the individually named supervisors. With respect to damages, the jury awarded Bhaduri $25,000 in compensatory damages and $75,000 in punitive damages.
Defendants now seek judgment notwithstanding the verdict, or remittitur of punitive damages. Bhaduri asks the Court to keep the jury’s verdict intact, or to declare a mistrial and a new trial on all the issues.

DISCUSSION

I. Motion for Judgment Notwithstanding the Verdict

A motion for judgment notwithstanding the verdict should be denied if, “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.” Freeman v. Planning Bd. of West Boylston, 19 Mass. 548, 550 (1995), quoting Kelly v. Ry. Exp. Agency, Inc., 315 Mass. 301, 302 (1943). Without weighing the credibility of witnesses or otherwise considering the weight of the evidence, the court must take the evidence in the light most favorable to the plaintiff to determine whether the jury could have reasonably returned a verdict for the plaintiff. See Rubel v. Hayden, Harding & Buchanan, Inc., 15 Mass.App.Ct. 252, 254 (1983). A motion for judgment notwithstanding the verdict can only be based on the arguments raised for a directed verdict. Mass.R.Civ.P. 50(b); see Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 34 (1991) (citations omitted). In addition, a litigant must specifically state the grounds which support the motion. See Bonofiglio, 411 Mass. at 34-35.
Under G.L.c. 15 IB, §4(4A), it is unlawful “(for any person to coerce, intimidate, threaten, or interfere with another person in the enjoyment of any right granted or protected by [chapter 15IB], or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right . . .” Pursuant to G.L.c. 15 IB, §4(5), it is unlawful “[for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.”
Defendants claim that Bhaduri did not present evidence that the Department’s supervisors coerced, incited, intimidated, threatened, or interfered with Bhaduri. Because the jury returned a verdict that found the individually named supervisors, Tierney, Coward, Ellison, and McCarthy not liable for count three, Defendants assert that there was insufficient evidence by which a jury could conclude that the unnamed supervisors, Dyment, Roebuck, and Moore, knew or should have known of the harassment by Bhaduri’s coworkers.
Bhaduri argues that as a procedural matter, Defendants have not properly brought their motion for judgment notwithstanding the verdict because Defen *332 dants now raise grounds which were not raised in their motion for a directed verdict. Even if Defendants properly brought their motion for JNOV, Bhaduri contends that he did offer sufficient evidence to support a jury verdict in his favor on count three.
This Court finds that Defendants failed to raise the sufficiency of the evidence for count three as an issue in its motion for a directed verdict. Defendants specifically argued that Bhaduri failed to introduce evidence to support his claim that he feared retaliation if he were to report the discriminatory conduct, and therefore, Bhaduri should have invoked the Department’s discrimination procedure as previously done in 1997. Defendants did not argue that Bhaduri failed to present evidence from which a reasonable jury could conclude that the unnamed supervisors knew of the discrimination, or that the harassment by various correctional officers was so pervasive that those supervisors should have known of the conduct.[10] Therefore, Defendants’ motion for judgment notwithstanding the verdict must be denied.

II. Motion Not to Vacate the Jury Award, or for a Mistrial and New Trial

Under Mass.R.Civ.P. 59(a), “[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials heretofore have been granted in actions at law in the courts of the Commonwealth . . .” The grant or denial of a motion for new trial rests in the discretion of the trial judge. See Robertson v. Snow, 404 Mass. 515, 520 (1989) (citations omitted). Ajudge may grant a new trial for any cause which in his or her judgment may have prevented a party from having a fair trial. See Bondsville Realty Corp. v. Diamond Int’l Corp., 44 Mass.App.Ct. 164, 168 (1970), affirmed 360 Mass. 870 (1972). The Court may grant a new trial if it appears that a miscarriage of justice would result if a new trial were not granted. See Evans v. Multicom Constr. Corp., 6 Mass.App.Ct. 291, 295 (1978).
A. Jury Question
The Court presumes that the jury follows all instructions presented. See Commonwealth v. Albert, 391 Mass. 853, 859 (1984). When a jury poses a question to the trial judge, the judge has wide discretion in framing his or her answer. See Commonwealth v. Watkins, 425 Mass. 830, 839 (1997) (citations omitted). When the jury asks for reinstruction or clarification of the law, the judge need not address areas outside the jury’s request. See Commonwealth v. James, 427 Mass. 312, 317-18 (1998); Urban Inv. & Dev. Co. v. Turner Constr. Co., 35 Mass.App.Ct. 100, 104-05 (1993), citing Blood v. Dewey, 318 Mass. 79, 83-85 (1945) (holding trial judge not obligated to repeat original instructions when responding to a specific inquiry by the jury). The judge only needs to reinstruct the jury if the jury was not adequately instructed on the main charge. See Commonwealth v. Johnson, 429 Mass. 745, 753 (1999) (stating that trial judge need not repeat the whole or any part of the original instructions).
Bhaduri claims that the Court’s response to the jury question was sufficient and that in combination, with the charge, the Court properly and adequately instructed the jury as to the current state of the law concerning employer liability for the discriminatory conduct of one’s coworkers. The Court agrees. In the main charge the Court stated: “Under Massachusetts law, liability may be imposed on an employer once an employer knew or should have known of harassing conduct but failed to take prompt, effective and reasonable remedial action.” This instruction along with the language that followed[11] accurately reflects the state of the law and the Court was not required to repeat this instruction in its response to the jury’s question.

B. Jury Instructions

In looking to whether the trial judge erred in instructing the jury, the test is whether “the charge as a whole... provided the jury with clear, adequate, and complete instructions on the issues presented by the evidence.” Leech v. Ebers, 12 Mass.App.Ct. 1004, 1005 (1981); see also Posner v. Minsky, 353 Mass. 656, 660 (1968); Foreign Car Ctr. v. Salem Suede, Inc., 40 Mass.App.Ct. 15, 24 (1996) (examining whether the judge adequately covered the topic and whether the jury could have been misled by the choice of words used). On review, “a charge is to be tested on the reading of the charge as a whole and not by a consideration of any fragment of it which may be open to criticism.” Haven v. Brimfield, 345 Mass. 529, 533 (1963) (quotation and citations omitted); Cooper v. Richter, 8 Mass.App.Ct. 878, 879 (1979).
It is the duty of the trial judge to give “full, fair, correct and clear instructions as to the principles of law governing all the essential issues presented, so that the jury may understand their duty and be enabled to perform it intelligently.” Fenton v. Bryan, 33 Mass.App.Ct. 688, 693 (1992) (quotation and citations omitted). In Commonwealth v. Estremara, the SJC determined that standing alone, the trial judge’s failure to define malice could be error. 383 Mass. 382, 394 (1981). While the defendant claimed that this failure left the jury to speculate as to what facts might constitute an essential element of the crime, the SJC held that in “viewing the charge as a whole, the jury [was] adequately instructed on the mental state necessary to support a conviction of murder in the second degree.” Id. (concluding that trial court’s instructions on criminal responsibility were equivalent to a proper instruction on malice). Cf. Srebnick v. Lo-Law Transit Mgmt., 29 Mass.App.Ct. 45, 48 (1990) (holding that the judge’s failure to define negligence in the jury instructions upon objection entitled defendant to a new trial on the negligence issue).
*333 In Commonwealth v. Niziolek, the SJC held that a trial judge’s failure to define malice in the juiy charge required the jury to speculate in reaching its decision. 380 Mass. 513, 527 (1980). As a result, “the juiy could not determine, without knowing what malice meant in the context of this case, whether the Commonwealth had carried its burden of establishing the existence of this element beyond a reasonable doubt.” Id. Therefore, the SJC set aside the verdict with respect to the arson charge. Id. at 532.
A party who has not requested a juiy instruction at trial cannot later complain that the instruction was not given so long as the Court, taking the entire charge into account has given the juiy an adequate charge on the controlling issues in the case. See Composto v. Massachusetts Bay Transp. Auth., 48 Mass.App.Ct. 477, 479-80 (2000); DeSanctis v. Lynn Water & Sewer Comm’n, 423 Mass. 112, 118-19 n.11 (1996); Carvalho v. State Band Club, Inc., 3 Mass.App.Ct. 755, 755 (1975) (holding that “the defendant was entitled to an adequate charge on the controlling issues of the case, his failure to request instructions before the charge is immaterial”). But see McNamara v. Honeyman, 406 Mass. 43, 53 (1989) (holding petitioner’s failure to request a jury instruction on the matter or failure to object to an aspect of the charge constituted a waiver of that argument on appeal); Noyes v. Raymond, 28 Mass.App.Ct. 186, 194 (1990) (holding that although parts of the charge may have been confusing and the judge neglected to define a statutory term, the defendant’s failure to make a timely and specific objection to the confusing language renders an argument on appeal concerning that terminology inappropriate). The failure to timely object to the juiy charge will result in a review to determine whether any error to instruct created a substantial risk of a miscarriage of justice. See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999); Commonwealth v. Delaney, 425 Mass. 587, 595-96 (1997).
Bhaduri claims that Defendants waived their right to object to the Court’s instructions to the juiy. Defendants assert that the only way a juiy could conclude that the Department aided, abetted, coerced, incited, intimidated, or interfered with Bhaduri’s enjoyment of his rights was through speculation and conjecture.
The jury posed its question, two and one-half hours after the charge was read, at which point the Court and the parties discussed the adequacy of the charge. While Defendants did not raise the sufficiency of the instruction to the Court before the charge was read or immediately thereafter, the Court raised its concerns about the juiy instructions sua sponte. The Court concluded that its failure to define the terms in Question 3 was error, stating:
And for them to have received no instructions on it is error because they’re in there, God knows, speculating about, well, you know, how do you violate this part of the statute? R. 8-11, 8-13, 8-14. [T]hey’re in there stewing over something which I’ve given them no guidance on, no guidance whatsoever. Neither party proffered any guidance, you know, and I had incorrectly assumed that that part was out of the case. R. 8-20.
Both parties were on notice of the Court’s “failure to adequately articulate with clarity the law governing the issues raised during the trial.” See Gelineau v. Massachusetts Bay Transp. Auth., 1 Mass.App.Ct. 815, 816 (1973).
As a result of this error, the juiy was left to speculate as to what the statutory terms meant, which constitutes error. Therefore, the verdict must be vacated with respect to Question 3. While the declaration of a mistrial is in the sound discretion of the trial judge, a mistrial is inappropriate in this case. See Dubos v. Driscoll, 404 Mass. 634, 645 (1989). There is no evidence to suggest that the jury’s deliberations as to counts one, two, and four were improperly affected by the Court’s response to the juiy’s question on count three.[12] Accordingly, this Court will grant a new trial on count three only.[13]

ORDER

For the reasons stated above, it is hereby ORDERED that Defendants’ motion for judgment notwithstanding the verdict is DENIED, and the plaintiffs motion for new trial is ALLOWED with respect to count three.
*334 Mr. Bhaduri is claiming that he was subjected to racial discrimination, countiy of origin discrimination, and retaliation, and that the defendants are liable because they knew or should have known about this hostile environment, and that they did nothing about it.
The defendants’ contentions, in response to Mr. Bhaduri’s claims are twofold. First, they contend that Mr. Bhaduri was not subjected to discrimination or retaliation. And second, that if he was, the defendants did not know of it nor should they have known of it.
Under Massachusetts law, liability may be imposed on an employer once an employer knew or should have known of harassing conduct but failed to take prompt, effective and reasonable remedial action.
The fact that an employer’s efforts did not actually succeed in stopping or preventing the harassment, is not determinative. The question is whether the employees - I’m sorry .- the employer’s total response was reasonable under the circumstances as they existed. If the employer knew, or should have known of the harassing conduct, and failed to take reasonable remedial measures, the employer may be liable for failing to stop the harassing conduct.
In this case, the employer, the Middlesex County Sheriffs Department, acts through its supervisors. Any officer who was in a position to supervise, discipline, or control the plaintiff Rajkumar Bhaduri, is to be considered a supervisor for the purposes of determining whether the sheriffs department is liable to the plaintiff. R. 7-81, 7-82.

In his complaint, Bhaduri alleged federal claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-l et seq. and under 42 U.S.C. §1981, however, these claims were abandoned before trial.

This Court notes that the events occurring in 1997 lay a foundational basis for Bhaduri’s retaliation claim against the Defendants. During the summer of 1997, Bhaduri was subjected to harassment because of his national origin. He reported the harassment to McCarthy pursuant to internal Department procedure, and after an investigation, the Department discharged four correctional officers. Bhaduri was also involved in a labor arbitration whereby he testified against the reinstatement of a fellow officer who had been fired for harassing Bhaduri because of his national origin.

At trial, Bhaduri testified that he was harassed by his coworkers, correctional officers McBride, Nionakis, and Car-vello. Bhaduri stated that he was called an “Indian rat,” he was spit on, and he was threatened daily. Bhaduri’s journal indicated that his coworkers made statements such as “we’re watching you,” and “you’re die” [sic] with an illustration of a hangman’s noose hanging in the bathroom. He testified that his coworkers prevented him from using the officers’ bathroom and instead he had to use the inmates’ bathroom. Further, Bhaduri’s coworkers did not allow him to take phone calls from his wife while at work. Bhaduri also presented evidence that Lieutenants Roebuck and Moore, unnamed supervisory officers in the litigation, were at least aware if not involved in the harassment.

This information chain was corroborated by testimony from Marie Morando, Martin Gabriella, and Kiernan Lennon.

The special verdict slip stated:
Question I: Did any supervisor in the Middlesex County Sheriffs Department discriminate against Mr. Bhudari?
*334 Question II: Did any supervisor in the Sheriffs Department retaliate against Mr. Bhudari?
Question III: Did any of the defendants coerce, intimidate, or interfere with the plaintiff Rajkumar Bhaduri in the exercise or enjoyment of his rights and/or aid, abet, incite, compel, coerce, or attempt the doing of any acts which interfered with the plaintiff Rajkumar Bhaduri’s enjoyment of his rights?
Question IV: Did any of the individual defendants intentionally interfere with the plaintiffs employment relationship?

The Court stated:

The Court stated:
And while the Appeals Court appears to say as to those cases that private entities may be vicariously liable, may be - which is not the rule under the Federal law, to the contrary, for acts of their employees - there is no case law that states almost anywhere - either on the Federal side or the State side - about vicarious liability being imposed for non-, vis-a-vis non, anyone who, you know, who does an act who’s not in the non-supervisory non-slash-managerial position. R. 8-2, 8-3.

In that same discussion, the Court states:
But, the bottom line, [is the jury] didn’t get a single instruction on that statute, not a single instruction on aiding, abetting, what constitutes aiding and abetting - is aiding and abetting sitting aside and let it happen: is aiding — I mean heck, if that’s the truth, you can get every corrections officer. Maybe there were ten corrections officers present when Joe Schmo said to Mr. Bhaduri such, and the other nine didn’t speak up; maybe that’s aiding and abetting . . . And you can drive a truck through the area where they would be engaged in speculation, which I can’t allow them to do. Well, what’s aiding and abetting? Was aiding and abetting when Lieutenant, whatever his name is stood there and saw so-and-so do this? Is it aiding and abetting when he didn’t speak up? Is it aiding and abetting when he’s such-and-such? . . . they still got no instructions on it. And for them to have received no instructions on it is error because they’re in there, God knows, speculating about, well, you know, how do you violate this part of the statute? R. 8-11, 8-13, 8-14. [T]hey’re in there stewing over something which I’ve given them no guidance on, no guidance whatsoever. Neither party proffered any guidance, you know, and I had incorrectly assumed that that part was out of the case. R. 8-20.

Even if Defendants’ motion for judgment notwithstanding the verdict were properly before this Court, this Court finds that a jury could reasonably conclude based on the evidence presented at trial, that the Department knew or should have known of the harassment. If the jury credited Bhaduri’s testimony, it could have concluded that unnamed supervisors Dymment, Roebuck, and Moore either contributed to or knew of the harassment. Bhaduri also presented evidence that the harassment by correctional officers McBride, Nionakis, and Carvello was severe and pervasive, by which a jury could conclude that the unnamed supervisors should have known of the conduct.

 See supra footnote 7.

Because the error only pertains to Question 3, the jury’s findings as to liability on Questions 1, 2, and 4 trigger the doctrine of res judicata, which precludes Bhaduri from relitigating those issues.

Because the Court is vacating the jury award and granting a new trial on count three, it need not address Defendants’ motion for remittitur of damages.